458 So.2d 569 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
James W. BARBEROUSSE, Defendant-Appellant.
No. CR83-890.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Rehearing Denied November 26, 1984.
*570 Michael K. Dees, McHale, Bufkin & Dees, Lake Charles, for defendant-appellant.
Leonard Knapp, Jr., Dist. Atty., Charles Richard, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
CUTRER, Judge.
James W. Barberousse was indicted for the commission of a negligent homicide. He was accused of killing his sister, Bonnie Lou Barberousse Jenkins in violation of LSA-R.S. 14:32.[1] He was convicted by a jury and, pursuant to LSA-C.Cr.P. art. 893.1, the trial judge imposed a sentence of five years at hard labor without the benefit of probation or parole. The defendant appealed his conviction and sentence alleging eight assignments of error. Two of the assignments have been abandoned on appeal, due to the defendant's failure to argue or brief them. State v. Washington, 430 So.2d 641 (La.1983). The remainder will be treated after a discussion of the facts.

FACTS
The defendant, 43 years of age, lived in Lake Charles with his older sister, Bonnie Lou Jenkins, in a house owned by Bonnie's paramour, Albert Fewell. Apparently, Bonnie was an unemployed alcoholic, and her only source of funds was from Albert. The defendant had asked Albert not to provide any money for Bonnie which might sustain her drinking habit. The defendant worked as a bartender at a local lounge (Fontenot's) and feared losing his job because of his sister's actions at times.
On January 30, 1982, in the early evening, the defendant was told by Albert that the latter had left Bonnie at Fontenot's and that she was drinking rather heavily. Borrowing Albert's vehicle, the defendant left to retrieve his sister. According to the defendant, when he arrived at Fontenot's lounge, Bonnie was involved in an argument with a couple, one of whom was a rather large man. This caused the defendant to arm himself with a .38 caliber handgun kept behind the bar (apparently for use by the lounge's employees).
*571 During the trip home, Bonnie and the defendant engaged in an argument which resulted in her departure from the vehicle. She arrived, however, at Albert's house only minutes after the defendant, where the argument ensued. At some point, Bonnie fell to the floor from a couch in the living room and called for Albert.
When Albert entered the room, the defendant pulled the loaded gun from his boot, cocked it and pointed it at Albert. The defendant testified that, by his actions, he was attempting to frighten Albert into not giving Bonnie any more money for alcohol. Albert stated that the gun was directed at him by the defendant, who told Albert not to call an ambulance as requested by Bonnie. No evidence was presented at trial as to why Bonnie wanted an ambulance. During this time, Bonnie remained on the floor. According to the defendant, he was lowering the gun and attempting to uncock it when it discharged. The single bullet entered Bonnie's chest causing her death only moments later.
Albert testified that his back was turned when he heard the shot. At all times, the defendant has averred that the discharge was accidental and that he never intended to shoot Bonnie. One of the investigating officers testified that the fatal weapon had a "fairly light" trigger pull. Albert also stated that he believed that the defendant had loved his sister and that he helped her as he could.
We now proceed with a discussion of the assignments of error.

SUFFICIENCY OF EVIDENCE
The defendant first argues by this assignment that he was convicted of negligent homicide by evidence constitutionally insufficient to sustain a conviction. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Recently, in another negligent homicide case, also involving the use of a handgun, this court stated the applicable standard of review thusly:

"Under the law, we are called upon to review the evidence in the light most favorable to the prosecution; only if we then find that any rational factfinder could not have found that the State proved every element of the crime beyond a reasonable doubt can we supplant the factual findings of the lower court. ...."
State v. Deville, 451 So.2d 129, 132 (La. App. 3rd Cir.1984).
Negligent homicide is defined as "the killing of a human being by criminal negligence." LSA-R.S. 14:32. The definition of criminal negligence is set forth in LSA-R.S. 14:12 as follows:
"Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
The defendant argues that the extraordinarily high blood alcohol level found in the victim could have caused her death, such that she was not "killed" by the defendant's criminal negligence. The physician, Dr. Stanley Smith, who performed the autopsy on the victim, stated that her blood alcohol level was "452 mgs per cent (100 mgs. per cent considered to be legal intoxication)." Dr. Smith testified that this level exceeded the levels generally associated with possibly fatal comas350 to 400 mgs percent. Further, Dr. Smith stated that the victim could have died of toxicity from the amount of alcohol in her system. It is this testimony which the defendant seeks to utilize to attack the State's proof as to Bonnie's death. However, such an attack is likewise defeated by Dr. Stanley's unequivocal testimony that, notwithstanding her drunkenness, the victim's death directly resulted from the gunshot to her chest, causing a fatal loss of blood.
Undeniably, the defendant in the instant case deliberately pulled a loaded .38 caliber revolver; cocked it; and pointed it at another human being, supposedly to *572 frighten that person (Albert) into complying with the defendant's request to desist in providing drinking funds for Bonnie. The gun discharged, the bullet striking Bonnie in the chest. The defendant has constantly averred that he did not intend to shoot his sister. Under these circumstances, a classic case of negligent homicide has been established by the State. The defendant's actions, in handling the gun, amounted to criminal negligence which resulted in the killing of Bonnie Jenkins.
Accordingly, this assignment has no merit.

ADMISSIBILITY OF PHOTOGRAPHS
In this argument the defendant contends that a reversible error occurred when the trial court allowed into evidence, over defendant's objection, certain photographs of the victim and the scene of the crime. The defendant alleges that the photographs were gruesome and introduced by the State for the sole purpose of inflaming the jury against the defendant. The trial judge found the pictures not to be gruesome and, therefore, not prejudicial to the defendant.
We are in accord with the lower court's finding. Our Supreme Court answered a similar contention as follows:

"It is well established that the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. Photographs of the body of a deceased victim have generally been held relevant to prove the corpus delicti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; and to establish the identity of the victim. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Lewis, 353 So.2d 703 (La.1977). After examining the photographs in question, we do not consider that they are gruesome. Moreover, they were relevant to prove the identity of the murder victim and to corroborate the testimony concerning the manner in which the victim was killed. Accordingly, the probative value of the photographs outweighs any possible prejudicial effect."

State v. Perry, 420 So.2d 139 (La.1982), certiorari denied, ___ U.S. ___, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). The trial court correctly admitted the photographs into evidence.
This assignment lacks merit.

ENHANCEMENT OF THE SENTENCE UNDER LSA-C.CR.P. ART 893.1
Three assignments concern the trial court's use of LSA-C.Cr.P. art. 893.1 to enhance the sentence of defendant. We shall consider these assignments together.
This provision, which became effective in 1981, enhances certain penalties as to felonies committed with the use of a firearm. Article 893.1 reads as follows:
"When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
"Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole."
Negligent homicide is deemed a felony, because it subjects those found guilty of that crime to the possibility of imprisonment at hard labor. LSA-C.Cr.P. art. 933; LSA-R.S. 14:2. The maximum term of imprisonment which may be imposed upon those convicted of negligent homicide is five years at hard labor. LSA-R.S. 14:32. Suspension of sentence is not prohibited by that article. Therefore, under art. 893.1 the trial judge in the instant case was required to impose a sentence of five years at hard labor without the benefits of probation *573 or parole, if he made the finding that a firearm was used in the commission of the negligent homicide of Bonnie Jenkins. The evidence reflects that a firearm (.38 caliber pistol) was used in the commission of this felony and, therefore, that the trial court correctly applied art. 893.1.
Next, we address the defendant's argument that he should have been granted (as he requested) a separate hearing on the applicability of art. 893.1, since the trial court must make a finding that a firearm was used. A similar contention was recently addressed by the First Circuit, which appropriately stated the following:
"[Defendant] contends further the court should have held an adversary hearing on whether or not a firearm was used in the commission of the offense charged. A sentencing court, as was done here, may draw from extensive sources of information and the traditional rules of evidence are not bars to consideration of otherwise relevant information. State v. Washington, 414 So.2d 313 (La.1982). In a multiple offender proceeding the trial court has the right to take judicial notice of any prior proceeding which was a part of the same case it tried previously. See State v. Martin, 400 So.2d 1063 (La. 1981), on rehearing. We apply the same rule to the analogous situation of an enhancement proceeding for the use of a firearm."

State v. Moore, 442 So.2d 726 (La.App. 1st Cir.1983).
We, likewise, see no need or justification in this case for requiring a separate hearing as to the trial court's finding regarding the use of a firearm. The sentencing judge presided at the trial, which conclusively reflected that a firearm caused the victim's death. The defendant argues that the analogy drawn from the multiple offender statute (R.S. 15:529.1), which expressly requires a hearing regarding prior convictions of the defendant, should equally necessitate a separate hearing for application of art. 893.1.
LSA-R.S. 15:529.1(D) expressly requires a hearing, while art. 893.1 makes no such requirement. Obvious reasons for this distinction exist. In the former situation, there is the need to receive evidence of prior convictions necessary to impose the sentence strictures of R.S. 15:529.1evidence which likely was not presented at the trial on the defendant's latest conviction. The evidence at trial in the instant case, however, clearly established the defendant's use of a firearm. Under these facts, we can see no need to impose a separate hearing the Legislature deemed necessary when it created art. 893.1.[2]
The next argument by the defendant as to art. 893.1 is that the trial court erred in applying it, as the Legislature, allegedly, never intended this enhancement provision to apply to negligent homicide crimes, since there is no criminal intent involved in this felonious act. This court recently had cause to examine the legislative intent behind art. 893.1's enactment, and the following was stated:

"The purpose of the article is to enhance penalties for gun-using felonies. The enhancement includes a prohibition against suspension of sentence. The Legislature obviously does not want gun-using felons to get suspended sentences. However, the Legislature is content to let the gun-using felon escape the enhancement of article 893.1 if suspension of his sentence is already prohibited by some other law. That appears to be why it made the article applicable to gun-using felonies only when suspension of sentence is not otherwise prohibited.

"The significance of the italicized language in the application of the article is indicated by the number of times in our law when suspension of sentence will be found to be `otherwise prohibited.' By means of R.S. 14:95.2, for example, *574 the Legislature has provided an enhancement penalty of two additional years without benefit of suspension when a firearm is used in the commission of certain felonies. When article 893.1 was made the law in 1981, the Legislature was aware that it had already provided an enhanced penalty for the use of a firearm in certain enumerated felonies by means of R.S. 14:95.2, and that the additional penalties therein imposed could not be suspended. The Legislature was also aware that a number of other potentially firearm-using violent felonies are on the books but the penalty for some of these already prohibits the suspension of sentence, armed robbery being just one example. Also, in felony cases suspension of sentence is permitted for first convictions only under C.Cr.P. art. 893, and suspension of sentence is thereby automatically unavailable for any second offense felon. It is reasonable to suppose that these are the reasons why the Legislature made article 893.1 applicable only to felonies where the suspension of sentence was not otherwise prohibited. Article 893.1 does not apply to these offenses where suspension is already prohibited but as to all other felonies where a finding is made that a firearm was used in the commission of the offense, the article applies.

"Care was taken by the lawmakers to assure that no gun-using felony would remain subject to a suspended sentence. Article 893.1 is aimed at achieving that result. The Legislature saw no need to amend each individual felony statute, as it might have done, to provide an enhanced penalty. It chose to accomplish that purpose by a single enactment in the form of article 893.1." (Emphasis in original.)
State v. Victorian, 448 So.2d 1304 (La.App. 3rd Cir.1984), on rehearing, writ denied, 452 So.2d 167 (La.1984).
Article 893.1 provides no indication that it intended to exclude from its scope offenders who committed negligent homicide. The provision quite simply states that it applies to felonies committed with the use of a firearm when suspension of sentence is not otherwise prohibited. Negligent homicide is a felony, which is committed when a human being is killed by the criminally substandard action of another. We can see no reason for disregarding the clear letter of the law as created by our Legislature in art. 893.1; under the law, violators of R.S. 14:32 who utilize a firearm in that violation are subject to the enhancement provisions of art. 893.1.
Also raised by the defendant is the allegation that art. 893.1 violates his equal protection rights in creating a constitutionally infirm class distinction between criminals who use firearms and those who do not. This court has previously addressed a similar claim and failed to find that armed criminals constituted a "protected `class of persons.'" State v. Adams, 446 So.2d 355 (La.App. 3rd Cir.1984). Further, the court in Adams recognized that the legislative intention in controlling firearm abuse was legitimate in the creation of art. 893.1. We agree.
The defendant also argues that his due process rights were violated by the State's failure to include art. 893.1 in a bill of information, such that he was unconstitutionally deprived of notice and a chance to defend against the impending effect of that provision. Although we note that ample evidence exists that the defendant did have actual notice of the forthcoming application of art. 893.1 we decline to decide this issue on that basis.[3]
In State v. Roussel, 424 So.2d 226 (La. 1982), our Supreme Court rejected a defendant's argument that he was given inadequate notice and opportunity to defend against the imposition of LSA-R.S. 14:95.2, which mandates an additional penalty for *575 perpetrators of certain crimes committed with the use of firearms or explosive devices. In rejecting that defendant's argument that a bill of information should be required charging one under R.S. 14:95.2 before punishment may be imposed, the court held that no separate crime was created by R.S. 14:95.2 and, therefore, no bill was required.
That rationale applies with equal (if not greater) force to the instant case, as art. 893.1 also does not create a separate crime; it merely enhances a possible penalty and restricts the trial judge's sentencing discretion. State v. Victorian, supra. Revised Statute 14:95.2 goes beyond that by imposing a separate and additional penalty. If violators of the latter provision are not entitled to notice of its impending application by bill of information, or otherwise, then a fortiori a formal notice of the applicability of art. 893.1 is not required.
The final constitutional attack on art. 893.1 by the defendant consists of his contention that it imposes cruel, unusual and excessive punishment. The multiple offender statute (R.S. 15:529.1) has repeatedly withstood similar attacks. See, e.g., State v. Lee, 364 So.2d 1024 (La.1978), and the cases cited therein. The legislative intent of that statute is to deter the acts of those who have shown repeated criminal propensities. The enhancements available under R.S. 15:529.1 may significantly exceed the penalty set forth in the latest crime committed.
Likewise, art. 893.1 (in less severe means) furthers the legitimate legislative end of restricting the abuse of firearms by enhancing the penalties of those who criminally use these weapons. No constitutionally infirm punishment is imposed upon the defendant in this case by the application of art. 893.1.
For all of these reasons, these assignments have no merit.

WHETHER THE SENTENCING GUIDELINES OF C.CR.P. ART. 894.1 ARE APPLICABLE
By this final assignment the defendant alleges that the trial judge erred in failing to follow the sentencing guidelines of C.Cr.P. art. 894.1. That article aids the trial judge in the exercise of his sentencing discretion. It has no application to a case wherein the trial judge's discretion has been supplanted by a mandatory sentence. This occurred in the instant case, and an attempted application of art. 894.1 would have been nothing more than a meaningless exercise. This assignment, therefore, has no merit.
For all of the aforementioned reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs. I agree that this is a clear affirmation, however, I do not agree that Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), should apply to Louisiana criminal appellate review. See my concurring opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); and State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983).
NOTES
[1] LSA-R.S. 14:32 provides:

"Negligent homicide is the killing of a human being by criminal negligence.
"The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
"Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both."
[2] We, of course, have not been called upon to address the highly unlikely situation wherein the State requests application of art. 893.1 during sentencing, although no competent evidence of firearm usage was presented at trial or otherwise.
[3] In his requested charges to the jury, the defendant expressly requested that they be made aware of the sentence enhancement provisions of art. 893.1. Further, the sentencing hearing reflects that defense counsel was aware before trial of the scope of art. 893.1.