480 So.2d 273 (1985)
STATE of Louisiana
v.
James E. BARBEROUSSE.
No. 84-K-2146.
Supreme Court of Louisiana.
December 2, 1985.
Rehearings Denied January 9, 1986.
*274 Michael Dees, McHale, Bufkin & Dees, Lake Charles, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Richard Ieyoub, Dist. Atty., Charles Richard, Asst. Dist. Atty., F. Wayne Frye, Asst. Dist. Atty., for plaintiff-respondent.
CALOGERO, Justice.
In this case wherein under our supervisory jurisdiction we review a conviction and sentence for negligent homicide, we address several asserted errors, including some concerning application of one of the firearm enhancement statutes, La.Code Crim.Pro. art. 893.1.
James W. Barberousse was convicted before a jury for the commission of negligent homicide (La.Rev.Stat. § 14:32). Because a firearm was used in commission of the felony, the trial judge applied La.Code Crim.Pro. art. 893.1 along with La.Rev. Stat. § 14:32 and sentenced defendant, a first offender, to serve five years at hard labor, unsuspended, and without benefit of parole or probation.
On appeal, the Third Circuit Court of Appeal affirmed his conviction and sentence. We granted writs because his assignments of error included an attack on La.Code Crim.Pro. art. 893.1. We did so coincident with granting writs in seven other *275 cases.[1] The cases address a multitude of related issues, including some concerning La.Code Crim.Pro. art. 893.1. They were consolidated for argument. Separate opinions are being rendered this day.
Defendant's arguments in this Court are essentially three in number.[2] They concern 1) sufficiency of evidence, 2) the state's use of "gruesome" photographs, and 3) the constitutionality and/or procedural inapplicability of La.Code Crim.Pro. art. 893.1, with a related excessiveness of sentence contention. The arguments will be discussed hereinafter following a recitation of the facts involved in the case.

FACTS
Defendant lived with his sister, Bonnie, and her boyfriend, Albert. Apparently, Bonnie was unemployed and an alcoholic; her only source of money was Albert. Defendant often argued with the couple over Bonnie's drinking and over Albert's continued funding of her habit. On the evening of January 30, 1982, Albert told defendant that Bonnie was drinking at a local bar (in fact defendant's place of employment). Defendant went to the bar and found her in the midst of a heated argument with two other patrons. Fearing trouble, defendant went behind the bar and armed himself with a .38 caliber Colt revolver, but managed to remove Bonnie and get her into his car without further incident at that time. During the drive home they argued and, at some point, Bonnie left the vehicle and made her own way back to the house. As soon as she arrived, the three renewed the old argument. Details are disputed (officers testified that defendant admitted to threatening both Bonnie and Albert and to hitting her, knocking her to the floor). Defendant's version is that he drew, cocked and pointed the pistol at Albert in order to frighten Albert into helping him with Bonnie's drinking problem; that, in returning the pistol to his boot, he un-cocked it and somehow accidently discharged a single bullet, striking Bonnie in the chest. At trial, the medical evidence indicated death was caused by "gunshot wound ... due to massive intro-thoracic hemorrhage;" it also indicated the presence of lethal levels of alcohol in her blood. The jury convicted defendant of negligent homicide, as charged, and the court relied upon La.Code Crim.Pro. art. 893.1 to sentence the 43 year-old first offender to five years at hard labor without benefit of parole, probation or suspension of sentence. The Court of Appeal affirmed. State v. Barberousse, 458 So.2d 569 (La.App.3rd Cir.1984).

SUFFICIENCY OF THE EVIDENCE
Defendant argues in this assignment that he was convicted of negligent homicide by evidence constitutionally insufficient to sustain a conviction.
Negligent homicide is "the killing of a human being by criminal negligence." La. Rev.Stat.Ann. § 14:32. The definition of criminal negligence is set forth in La.Rev. Stat.Ann. § 14:12 as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
In reviewing a claim of evidentiary insufficiency, we follow the standard announced by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In accord with that standard this Court will resolve *276 any conflict in the light most favorable to the state and then determine whether the facts established by the direct evidence and inferred from the circumstantial evidence are sufficient for a rational juror to conclude beyond a reasonable doubt that defendant is guilty of every essential element of the crime. State v. Captville, 448 So.2d 676 (La.1984).
The treatment given this assignment of error by the Court of Appeal is ample and correct.
The defendant argues that the extraordinary high blood alcohol level found in the victim could have caused her death, such that she was not "killed" by the defendant's criminal negligence. The physician, Dr. Stanley Smith, who performed the autopsy on the victim, stated that her blood alcohol level was "452 mgs per cent (100 mgs. per cent considered to be legal intoxication)." Dr. Smith testified that this level exceeded the levels generally associated with possible fatal comas  350 to 400 mgs percent. Further, Dr. Smith stated that the victim could have died of toxicity from the amount of alcohol in her system. It is this testimony which the defendant seeks to utilize to attack the State's proof as to Bonnie's death. However, such an attack is likewise defeated by Dr. Stanley's unequivocal testimony that, notwithstanding her drunkenness, the victim's death directly resulted from the gunshot to her chest, causing a fatal loss of blood.
Undeniably, the defendant in the instant case deliberately pulled a loaded.38 caliber revolver, cocked it; and pointed it at another human being, supposedly to frighten that person (Albert) into complying with the defendant's request to desist in providing drinking funds for Bonnie. The gun discharged, the bullet striking Bonnie in the chest. The defendant has constantly averred that he did not intend to shoot his sister. Under the circumstances, a classic case of negligent homicide has been established by the State. The defendant's actions, in handling the gun, amounted to criminal negligence which resulted in the killing of Bonnie Jenkins. State v. Barberousse, 458 So.2d at 572-73.
The assignment of error is without merit.

ADMISSIBILITY OF PHOTOGRAPHS
The defendant contends that a reversible error occurred when the trial court allowed into evidence, over defendant's objection, certain photographs of the victim and the scene of the crime. The defendant alleges that the photographs were gruesome and introduced by the State for the sole purpose of inflaming the jury against the defendant. The trial judge found the pictures not to be gruesome and, therefore, not prejudicial to the defendant.
We agree with the lower courts' findings. This Court has addressed this issue previously and held:
It is well established that the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. Photographs of the body of a deceased victim have generally been held relevant to prove the corpus delicti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; and to establish the identity of the victim. State v. Gaskin, 412 So.2d 1007 (La. 1982); State v. Lewis, 353 So.2d 703 (La.1977). State v. Perry, 420 So.2d 139, 150 (La.1982), certiorari denied, [461] U.S. [961], 103 S.Ct. 2438, 7 [77] L.Ed.2d 1322 (1983).
See also State v. Smith, 327 So.2d 355, on rehearing, 327 So.2d 360 (La.1976).
The photographs in this case are simply not gruesome. And they were probative. The trial court correctly admitted them into evidence.
This assignment lacks merit.

ENHANCEMENT OF SENTENCE UNDER LA.CODE CRIM.PRO. ART. 893.1
As recited hereinabove the defendant Barberousse, a first offender, was convicted *277 of negligent homicide, a felony for which the punishment is prescribed by La. Rev.Stat. § 14:32, imprisonment "with or without hard labor for not more than five years ..." A firearm was used in connection with the felony; thus the sentence is normally governed by both § 14:32 and art. 893.1.[3]
Since suspension of sentence is not otherwise prohibited (first paragraph of art. 893.1), and since the maximum sentence for negligent homicide is five years or more (indeed it is five years), art. 893.1 prescribes a five year minimum sentence, unsuspended, and without eligibility for probation or parole. It was because of this article that the trial judge imposed an unsuspended sentence of five years at hard labor without benefit of probation or parole.
Defendant's complaint about the art. 893.1 enhancement and the sentence which was in fact ultimately imposed is many faceted. He contends that his due process rights were violated by the state's failure to include art. 893.1 in a bill of information; that, having requested it, he should have been granted a separate hearing on the applicability of art. 893.1 since the trial court must make a finding that a firearm was used; that the Legislature never intended the enhancement provision of 893.1 to apply to negligent homicide since there is no criminal intent involved in this felonious act; that art. 893.1 violates his equal protection rights in creating a constitutionally infirm class distinction between criminals who use firearms and those who do not; that art. 893.1 imposescruel, unusual and excessive punishment; and that the trial judge erred in failing to follow the sentencing guidelines of art. 894.1. We will address each of these contentions.

Lack of Notice, Failure to Include Art. 893.1 in Bill of Information
This contention, that defendant was unconstitutionally deprived of notice and a chance to defend against the impending application of art. 893.1, is without merit. In an opinion handed down this day, State v. Jackson, 480 So.2d 263 (La.1985), and for reasons more adequately expressed therein, we have decided that La.Rev.Stat. § 14:95.2, which provides an independent or supplemental penalty for use of a gun attending commission of ten specified felonies, is "sufficiently an accusation as to require that the accused `be informed of the nature and cause' thereof." Accordingly, to afford the defendant a fair notice, La.Rev.Stat. § 14:95.2 must be included in a bill of information or indictment. Conversely, we decided in State v. Jackson that art. 893.1, as a constitutional matter, need not be charged in a bill of information or indictment to trigger that article's enhancement provision. We reasoned that art. 893.1 does not define a crime and does not prescribe an independent penalty. Rather, it is solely a sentencing provision, limiting the judge's sentencing discretion when felonies (those where suspension of sentence is not otherwise prohibited) are committed with a firearm. It provides a minimum sentence and restrictions thereon within the penalty framework of the statutory crime committed. In that Jackson decision we were, however, prompted by compelling concerns discussed in that opinion to set forth a rule for prospective application only, that the prosecutor must, in advance of trial, give written notice to the defendant that the state intends to invoke art. 893.1. Thus triggered, this enhancement provision further requires a finding by the trial judge prior to sentencing that a firearm was used in the commission of the *278 charged felony. Absent such pre-trial notice in cases to be tried after these decisions the penalty enhancement provision contained in art. 893.1 shall not be applied. We further decided in Jackson that, even though Jackson's trial preceded rendition of this opinion, that case was nonetheless an appropriate one for nullification of a sentence imposed under the provisions of art. 893.1. Those reasons had to do with fundamental fairness, and are discussed at greater length in that opinion.
There is no such similar reason to grant the defendant relief in this case. This defendant did, in fact, have actual notice, not only that the state's evidence included proof that he discharged a firearm in committing a felony, but that he would be subjected to a forthcoming application of art. 893.1.
While defendant received no formal written notice, his lawyer was notified by the district attorney, in advance of trial in this case, that the state intended to introduce the weapon and the spent cartridge into evidence. Furthermore, on the last day of trial, defense counsel requested a jury charge on the applicability of art. 893.1 and its potential effect.[4] And at the sentencing hearing, defense counsel stated "it's the defendant's understanding because of all our pre-trial conferences, during the jury trial and everything, that the court intends to apply 893.1."
There is therefore no merit to defendant's contention that his due process rights were violated by the state's failure to include art. 893.1 in the bill of information. And he is not aided by our ruling in Jackson, this day, which directs for prospective application only that there be a pre-trial art. 893.1 notice.
Article 893.1 and a Separate Hearing
Defendant contends that he should have been granted, as he requested, a separate hearing on the applicability of art. 893.1. Since the trial court must make a finding that a firearm was used, he suggests that art. 893.1 contemplates a hearing at which the appropriate finding can be made.
This argument is based on the language of art. 893.1, "When the court makes a finding that a firearm was used in the commission of a felony...." The contention is that a trial judge's "finding" normally follows some type of hearing at which adversary evidentiary positions are presented for consideration.
Relator's position is not without some merit, especially where the fact finder at trial is a jury, as here, rather than the judge, for the court in the latter instance (jury trial) has not been the fact finder at trial and would not have been called upon to make any finding until after conviction. The fact finding function post trial (relative to art. 893.1) is part of the sentencing procedure, not the guilt finding process.
The preferred interpretation of art. 893.1 is that, at least upon request of a defendant, a post conviction pre-sentence hearing be conducted. With the jury (or judge) at trial not being charged with finding firearm use in order to convict for most felonies, it is not difficult to perceive some trials at which the defendant makes no special contest over use of a firearm during commission of the crime notwithstanding such contest might prove fruitful. Post trial, a hearing focused entirely on gun use, might well be more revealing on the important sentence enhancement fact, use of a firearm, than the evidence presented at trial.
The trial judge should therefore, upon defendant's request, conduct a hearing at which the "finding" can be made.
In this case, defendant did request a hearing, and the trial judge who had heard the evidence at jury trial refused to conduct a hearing. Nonetheless, several reasons prompt our not giving defendant the *279 benefit of this ruling by remanding for such a hearing and re-sentencing.
The trial judge did not have the benefit of this opinion, nor clarity in the statute. Furthermore, defendant did not suggest to the trial judge, nor to this Court now, that at a hearing he could dispute the use of a firearm in this shooting death/negligent homicide case, or present any other or different evidence than that which was presented at trial. It would be vain, useless and a waste of judicial time to order such hearing now.
Furthermore, there was a trial court "finding," which is what triggers the penalty enhancement of art. 893.1. In this case, the judge made that finding. Mr. Barberousse has no complaint. He has not been treated unfairly.
Art. 893.1 Applicable to the Crime of Negligent Homicide?
The defendant argues that the trial court erred in applying 893.1, for the Legislature never intended this enhancement provision to apply to negligent homicide, felonious conduct in which there is no criminal intent involved. The treatment of this issue by the court of appeal in this case was entirely correct. As they recited,
Article 893.1 provides no indication that it intended to exclude from its scope offenders who committed negligent homicide. The provision quite simply states that it applies to felonies committed with the use of a firearm when suspension of sentence is not otherwise prohibited. Negligent homicide is a felony, which is committed when a human being is killed by the criminally substandard action of another. We can see no reason for disregarding the clear letter of the law as created by our Legislature in art. 893.1; under the law, violators of R.S. 14:32 who utilize a firearm in that violation are subject to the enhancement provisions of art. 893.1.[5]
458 So.2d at 574.
Article 893.1 and Equal Protection
Defendant contends that art. 893.1 violates his equal protection rights in creating a constitutionally infirm class distinction between criminals who use firearms and those who do not. In Sibley v. Board of Supervisors, LSU, 477 So.2d 1094 (La. 1985), we recently held that under the Louisiana Constitution legislative classifications because of race and religious beliefs are banned absolutely, and the legislative classifications because of birth, age, sex, culture, physical condition, political ideas or affiliations are permitted, if the state can show that the classification is not arbitrary, capricious, or unreasonable. Felons do not fit into any of the specific categories noted above, and the state is thus not assigned the burden of justifying such a Legislative classification (felons with as opposed to felons without firearms in commission of crimes). As the Third Circuit Court of Appeal noted in State v. Adams, 446 So.2d 355 (La.App.3rd Cir.1984), armed criminals surely do not constitute a "protected class of persons." In creating art. 893.1, the legislative objective to control firearm abuse was a legitimate one. The Legislature sought to cure a serious problem resulting from the use of a firearm in a commission of a crime by increasing the penalty for gun wielding felons. The law is specifically tailored to alleviate this problem, and it is clearly rationally related to a valid governmental objective. Id.
Art. 893.1, Cruel, Unusual and Excessive Punishment, and the Absence of La.Code Crim.Pro. art. 894.1 Articulation
Defendant contends that art. 893.1 is constitutionally infirm because it imposes cruel, unusual and excessive punishment. He also contends that the trial judge in this case neglected to articulate his reasons for *280 sentencing consistent with the sentence guidelines of La.Code Crim.Pro. art. 894.1.
Art. 893.1 is a general sentencing enhancement statute applicable when a firearm is used in the commission of a felony. It is not per se constitutionally infirm, either standing alone, or as applied to this gun use negligent homicide offender. Art. 893.1 furthers the legitimate legislative end of restricting the abuse of firearms by enhancing the penalties of those who use weapons to commit crimes.
Nonetheless, we have held that imposition of a given sentence may violate a defendant's constitutional right against excessive punishment, even though that sentence is within the statutory limit, and that this Court may review a defendant's sentence for excessiveness on appeal. State v. Sepulvado, 367 So.2d 762 (La. 1979); State v. Williams, 448 So.2d 659 (La.1984).
Generally we have held that a sentence is excessive and unconstitutional if it is grossly out of proportion to the severity of the crime, in light of the harm caused to society. An unconstitutionally excessive sentence is one that shocks our sense of justice and is nothing more than the purposeless and needless imposition of pain and suffering. State v. Goode, 380 So.2d 1361 (La.1980); State v. Bonanno, 384 So.2d 355 (La.1980).
Mandatory sentences generally fall within the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. State v. Prestridge, 399 So.2d 564, 582 (La.1981). On the other hand, the constitutional proscription against cruel and unusual punishment will override a legislatively imposed mandatory minimum sentence if, as applied to a given defendant for a given crime the punishment is constitutionally excessive. That is not the case here.
Admittedly the trial judge did not articulate all or most of art. 894.1's aggravating and mitigating circumstances and other sentencing considerations. Nonetheless, there is enough of record in this case concerning this crime and its circumstances for us to conclude that five years without benefit of probation, parole or suspension of sentence is not constitutionally excessive. A woman was shot and killed by defendant who was found guilty of negligent homicide. Accordingly it would serve no purpose in this case to remand the case for resentencing and a compliance with art. 894.1.
None of relator's several complaints about the art. 893.1 enhancement, and the sentence imposed, have merit.

Decree
For all of the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXON, C.J., concurs and assigns reasons.
DENNIS, J., concurs.
WATSON, J., dissents being of the opinion that 893.1 only applies to intentional crimes.
LEMMON, J., dissents, believing that the legislature did not intend for La.C.Cr.P. Art. 893.1 to apply to unintentional crimes.
DIXON, Chief Justice (concurring).
I respectfully concur in the result, because defendant waived any right to require the bill of information to include a charge that he breached 893.1 and was therefore subject to its penalty. Otherwise, except that the wiser procedure would be that expressed in my concurrence in State v. Jackson, 480 So.2d 263 (La. 1985) I agree with and subscribe to this opinion.
NOTES
[1] State v. Jackson, 480 So.2d 263 (La.1985); State v. Harris, 480 So.2d 281 (La.1985); State v. Hogan, 480 So.2d 288 (La.1985); State v. Kennedy, 480 So.2d 299 (La.1985); State v. Blache, 480 So.2d 304 (La.1985); State v. Street, 480 So.2d 309 (La.1985) and State v. Delcambre, 480 So.2d 294 (La.1985).
[2] Defendant originally assigned eight errors. However Assignments of Error I, V(e), V(f), and VIII were not briefed nor argued in the Court of Appeal or in this Court. Consequently, they are considered abandoned. State v. Foley, 456 So.2d 979 (La.1984); State v. Wright, 445 So.2d 1198 (La.1984).
[3] La.Code Crim.Pro. art. 893.1 provides:

When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
[4] Defendant's Requested Charge No. 1 provided:

"If you find the defendant guilty, the law requires that I sentence the defendant to be imprisoned, with or without hard labor, for five years. The defendant would not be eligible to receive a suspended sentence or be placed on probation and would, further, not be eligible for parole. La.R.S. 14:32 La.C.C.P. 893.1."
[5] However, in another case decided this date, State v. Street, 85-K-0614, we found that art. 893.1 is not applicable to La.Rev.Stat. § 14:94, which prohibits the illegal use of a weapon. Since in passing § 14:94 the Legislature prescribed a punishment for use of a weapon, we concluded that it must not have intended that same conduct to trigger an additional, more harsh punishment.