CARTER, Judge.
Wade East, the defendant, and Shelby Arabie, an accomplice, were charged by indictment with the second degree murder of Benny Posey, in violation of LSA-R.S. 14:30.1. Pursuant to a plea bargain agreement, the defendant pled guilty to accessory after the fact to second degree murder, LSA-R.S. 14:25 and LSA-R.S. 14:30.1. In return, the defendant agreed to testify at the trial of his accomplice, Shelby Arabie. The defendant received a sentence of five years at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals, alleging three assignments of error, as follows:
1. The trial court erred when it used LSA-C.Cr.P. art. 893.1 as a part of the sentencing guideline for determining the defendant’s sentence;
2. The trial court erred when it found a factual basis for applying LSA-C.Cr.P. art. 893.1 to the defendant’s sentence; and,
3. The trial court erred in imposing an excessive sentence.
The following facts are taken from police reports in the record, the pre-sentence investigation report, and the defendant’s testimony before a grand jury. Wade East and Shelby Arabie (also referred to herein as “sellers”) had arranged to sell ten pounds of marijuana to Benny Posey and Thomas Boswell (also referred to herein as “buyers”). The buyers were from Meridian, Mississippi. The buyers were to meet East and Arabie at the Butte LaRose rest area, which is located on Interstate 10 between Lafayette and Baton Rouge. The buyers decided to steal the marijuana from East and Arabie, instead of buying it. They formulated a plan with Bruce Posey, the victim’s brother, Betty Sue Campbell, and Johnny Hastings, all of whom were also from Meridian, Mississippi.
On the evening of September 20, 1984, East and Arabie met the buyers, Benny Posey and Thomas Boswell, at the rest area. East and Arabie were riding in Arabic’s white Z-28 Camaro. The buyers arrived in Benny Posey’s white Chevrolet van. The buyers and the sellers were seated inside the back of the Chevrolet van when Bruce Posey and Betty Sue Campbell, posing as hitchhikers, entered the van. Bruce, armed with a .32 caliber revolver, held the occupants at bay while Betty drove the van a short distance to a deserted location. The sellers and buyers were forced to empty their pockets into the suitcase containing the marijuana, then they were released.
Betty and Bruce drove the van back to the rest area, where they met Johnny Hastings, who was driving a Lincoln Continental. They transferred the money and the marijuana into the Lincoln Continental and headed eastbound on Interstate 10. Shortly thereafter, the buyers and sellers were able to flag down a pickup truck and get a ride back to the rest area. East and Ara-bie observed the transfer to the Lincoln Continental, and a high-speed chase on the interstate followed, with East and Arabie in the Camaro pursuing Johnny, Bruce, and Betty in the Lincoln Continental. One of the passengers in the Lincoln fired several shots at the Camaro. Both Arabie and East were armed. On one occasion, Arabie pulled up beside the Lincoln and told East to shoot them. East refused, but he did shoot one of the Lincoln’s tires. At this point, Arabie and East noticed that Benny Posey and Thomas Boswell were following right behind them in the white Chevrolet van.
The chase continued into Baton Rouge, even though the Lincoln had lost a tire and was riding on the rim. The Lincoln took the Interstate 110 exit ramp onto North Street and ran the red light at North 9th Street. Arabie and East were unable to pursue the Lincoln because Benny Posey had stopped the van at the red light. When Arabie ordered him to move the van out of the way, Benny Posey replied that the van had run out of gas. Arabie then fired one shot from his 9 millimeter automatic pistol, which struck Benny Posey in the face. Benny Posey fell out of the van, which started to roll backwards. The Ca-maro then pulled around the van and sped *904 away. Benny Posey bled to death shortly thereafter.
After driving around for several minutes in downtown Baton Rouge, Arabie and East managed to get back onto Interstate 10 heading toward Lafayette. As they drove across the Interstate 10 Bridge over Henderson Swamp, Arabie threw both his 9 millimeter automatic and East’s .38 special into the water. The defendant later surrendered to the Louisiana State Police.
ASSIGNMENTS OF ERROR NOS. 1 & 2
By these assignments, the defendant argues that the application of LSA-C.Cr.P. art. 893.1 to the particular factual situation involved in this crime was error.
The trial court sentenced the defendant to serve five years at hard labor. However, in applying LSA-C.Cr.P. art. 893.1,[1] the trial court imposed the sentence without benefit of parole, probation or suspension. LSA-C.Cr.P. art. 893.1 provides:
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
The defendant pled guilty to accessory after the fact to second degree murder. LSA-R.S. 14:25 provides:
An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.
An accessory after the fact may be tried and punished, notwithstanding the fact that the principal felon may not have been arrested, tried, convicted, or amenable to justice.
Whoever becomes an accessory after the fact shall be fined not more than five hundred dollars, or imprisoned, with or without hard labor, for not more than five years, or both; provided that in no case shall his punishment be greater than one-half of the maximum provided by law for a principal offender.
The defendant does not contest the term of five years imprisonment at hard labor. However, defendant strenuously contests “that portion of his sentence which eliminates [his] right to parole, probation and suspension of sentence.”
The defendant argues that there was no factual basis for the trial court to impose ineligibility for suspension of sentence, probation or parole under LSA-C.Cr.P. art. 893.1. From the aforementioned facts, this argument is without merit. Although the defendant did not actually shoot the victim, he was armed with a .38 special before, during, and after Arabie shot the victim. Furthermore, the defendant fired several shots at the Lincoln during the high-speed chase, in an attempt (which proved successful) to shoot one of the tires.
In brief, the defendant states: “The question this Court will have to decide is whether the mandatory sentencing rules (LSA-C.Cr.P. Art. 893.1) apply when a firearm is used in the commission of a felony offense by a participant other than the defendant himself. This question of law is res nova. Cheney, Joseph C. (sic) Post *905 Conviction Procedure, 42 La.L.Rev. 693, 704 (1982).”
Certainly it is unclear whether LSA-C. Cr.P. art. 893.1 should apply to a situation in which a totally unarmed participant was involved in the commission of a felony offense in which another participant used a firearm. However, it is not necessary for this Court to decide the hypothetical situation presented by the defendant, which is decidedly different from the facts of record. The defendant fired several shots during the high-speed chase to Baton Rouge. The defendant was armed before, during, and after the victim was shot by Shelby Arabie.
From the facts in the case sub judice, it is clear that the defendant could have been charged as a principal and tried for second degree murder. See LSA-R.S. 14:24. Accessory after the fact to second degree murder is a felony. See LSA-R.S. 14:25; LSA-R.S. 14:30.1; LSA-C.Cr.P. art. 933(3). Therefore, LSA-C.Cr.P. art. 893.1 is applicable to the defendant’s sentence for this offense.
In State v. Barberousse, 480 So.2d 273 (La.1985), the Louisiana Supreme Court recently decided a case involving the legislative intent behind LSA-C.Cr.P. art. 893.1. In Barberousse, supra, the defendant accidentally shot and killed his sister. He was convicted of negligent homicide and was sentenced in accordance with the provisions of LSA-C.Cr.P. art. 893.1. On appeal, the defendant argued that the Legislature never intended for LSA-C.Cr.P. art. 893.1 to be applied to a crime which does not require criminal intent, such as negligent homicide. The Supreme Court disagreed and found that LSA-C.Cr.P. art. 893.1 was applicable. Since LSA-C.Cr.P. art. 893.1 can be applied to offenses which do not require criminal intent, such as negligent homicide, a fortiori, it can certainly be applied to accessory after the fact offenses, which do require criminal intent. This is especially true when the defendant is armed with a firearm.
For the above reasons, these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 3
The defendant argues that the erroneous application of LSA-C.Cr.P. art. 893.1 to his sentence made it excessive. Since we have found that the application of LSA-C.Cr.P. art. 893.1 to the defendant’s sentence was proper, this assignment of error is without merit.
DECREE
For the above reasons, defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
SAVOIE, J., dissents and assigns reasons.

. In State v. Jackson, 480 So.2d 263 (La.1985), the Louisiana Supreme Court recently held that pre-trial notice is required in order for LSA-C. Cr.P. art. 893.1 to be applied. However, charging LSA-C.Cr.P. art. 893.1 in the bill of information or indictment is not necessary. This requirement of pre-trial notice applies to all cases tried after December 2, 1985.