480 So.2d 281 (1985)
STATE of Louisiana in a threatening manner.
v.
Donnie Ray HARRIS.
No. 84-KO-1828.
Supreme Court of Louisiana.
December 2, 1985.
*282 Donald R. Minor, Richard Goorley, Richard Hiller, Shreveport, for defendant-applicant.
Donnie K. Harris, pro se.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Howard M. Fish, Catherine Estopinal, Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.
We consider in this review of a manslaughter conviction whether there was sufficient evidence to sustain a conviction, and whether the sentence imposed was in any respect illegal, considering that the firearm enhancement statutes, La.Rev.Stat. Ann. § 14:95.2 and La.Code Crim.Pro. art. 893.1 were both applied in the case. We granted writs in this case and in seven others which included related attacks on § 14:95.2 and art. 893.1. The eight cases were consolidated for argument in this Court. Decisions in the other seven are also being rendered this day.[1]
Defendant was indicted for committing manslaughter, a violation of La.Rev.Stat. Ann. § 14:31. He was tried by a twelve person jury which unanimously found him guilty as charged. At sentencing the trial judge was somewhat sympathetic with the defendant[2] and expressed that he might otherwise impose a five year unsuspended parolable sentence. Nonetheless, he felt compelled by the existence of § 14:95.2 and art. 893.1 to impose for this manslaughter offense (which authorizes a maximum penalty of twenty-one years with benefit) a prison term totalling seven years without benefit of parole, probation or suspension of sentence. He found it necessary to give five of those seven years under art. 893.1 and two of them under § 14:95.2, and as relates to each segment of the sentence, it was to be without benefit of parole, probation, or suspension.[3] For the reasons which follow we find no merit in the defendant's assignment of error relating to insufficiency of the evidence, but we find in part valid his complaints concerning the illegality of his sentence.
On Thanksgiving Day, November 25, 1982, Isiah Williams (the victim) was having a party at his residence. At the time, Isiah's brother, John Henry Williams, his step-daughter, Brenda Lubom, and Brenda's boyfriend, Rory Joyce, were living with Isiah. Gloria Bryant and Ethel Pimpton, girlfriends of Isiah's, joined the residents of the household at the party. Gloria Bryant was dancing with John Henry Williams when Isiah Williams slapped her. *283 This initiated a fight between the brothers, Isiah and John Henry Williams.
Irritated by the fighting, Gloria Bryant and Ethel Pimpton left Williams' residence and went next door to the defendant Donnie Ray Harris' house to use the telephone. Once at the home of Donnie Ray Harris, Ethel Pimpton discovered that $100.00 was missing from her purse. Pimpton and Ester Marie Evans, defendant Harris' girlfriend, returned to the party to look for the money. The money could not be located, so the pair returned to the defendant Harris' house suspecting that Isiah Williams had stolen the money.
Isiah Williams followed the women out on to the porch as they were leaving. He began cursing Ester Marie Evans and demanding that Gloria Bryant return to the party. The defendant came out onto his porch with his loaded, cocked shotgun at his side. From the photographs which were introduced into evidence, it appears that both houses had small, railed porches and were separated by a narrow alley. After a brief discussion between the two men, the defendant's shotgun discharged and Williams lay dying on his porch.
There was much conflicting testimony as to how the fatal shooting occurred. The State's witness testified that the victim was unarmed and unthreatening as he argued with the defendant. Defendant testified that because of the victim Williams' violent and aggressive reputation, he tried to retreat back into the house during the argument. Defendant further contends that the victim was armed with a shotgun and lunged at him from the other porch causing him to stumble backward, at which time the shotgun became entangled in a curtain on the front door of Harris' residence and discharged. An unloaded shotgun was found on the Williams' porch when the police arrived. However, the State's evidence indicated that that shotgun was on the porch because the decedent's brother, John Henry Williams, brought the gun outside after the incident, enraged at defendant's having shot Isiah.

Assignment of Error No. 1
The defendant contends that the State's evidence was not sufficient to prove all of the elements of the crime of manslaughter as there was insufficient evidence to show that the killing was not in self-defense. In reviewing a claim of evidentiary insufficiency, we follow the standard announced by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781; 61 L.Ed.2d 560 (1979). In accord with that standard this Court will resolve any conflict in the light most favorable to the state and determine whether the facts established by the direct evidence and inferred from the circumstantial evidence are sufficient for a rational juror to conclude beyond a reasonable doubt that defendant is guilty of every essential element of the crime. State v. Captville, 448 So.2d 676, 677 (La.1984). Considering that self defense was the main issue in this case we must resolve any conflict in the light most favorable to the state and determine whether a rational juror could have found beyond a reasonable doubt that this homicide had not been committed in self-defense. Jackson v. Virginia, supra and State v. Lynch, 436 So.2d 567 (La.1983).
Evidence adduced at trial indicated that the defendant discharged his shotgun and killed Williams. Defendant interposed the defense of self-defense, alleging that the victim was in possession of a shotgun and had brandished it in a threatening manner. The testimony at trial revealed that none of the individuals present at either residence, save for the defendant, could testify that the victim was armed when he went out onto his porch prior to the incident. Gloria Bryant, who was present inside defendant's house when the shooting occurred, testified that she saw the victim three or four minutes prior to the shooting and that he was unarmed. Brenda Lubom, who was present within the victim's house, testified that Williams was not armed when he left the house, that he was outside for approximately one minute prior to her hearing the shot, and that he did not reenter the house prior to being shot. She further stated that the victim's brother was *284 angered by the killing and brought the victim's shotgun out onto the porch after the shooting. Rory Joyce, who was also inside the victim's house, testified that Williams was unarmed when he left the house. He further testified that he witnessed the victim's brother John Henry Williams enter the house and get the shotgun after the shooting. John Henry Williams' testimony partially corroborates the above testimony. He admits that immediately after the shooting he ran back inside the house and obtained Isiah's gun. However, he stated that he left the gun in the living room when he could not find any shells, and he denied having brought the weapon onto the porch.
According to the defendant's testimony, the victim was attempting to cross the victim's porch railing and was facing defendant when he was shot. However, the evidence placed the victim's body in the center of his own porch rather than near the side railing thereof. Also, the defendant testified that he left his shotgun hanging in the plastic curtain of his front door after he fired the weapon and that his girlfriend, Ester Marie Evans, later removed it. However, the testimony of Gloria Bryant indicates that after the shooting the appellant ran back into the next room and put the gun away.[4]
The jury obviously resolved the conflicting testimony and the issue of credibility of the witnesses in favor of the state. The evidence presented, viewed in the light most favorable to the state, was sufficient for a rational juror to conclude that beyond a reasonable doubt defendant was guilty of every essential element of the crime, and that the homicide had not been committed in self-defense.
Assignment of error number one is without merit.

Assignment of Error No. 2
By defendant's second assignment he contends that the lower court erred in imposing an excessive and illegal sentence.
Defendant's arguments in connection with this assignment are that § 14:95.2 and art. 893.1 are unconstitutional violations of La. Const. art. I, § 20's assertion that "[n]o law shall subject any person ... to cruel, excessive, or unusual punishment." According to the defendant, application of both art. 893.1 and § 14:95.2 to the defendant are not only cruel, unusual and excessive, but statutorily impermissible. He contends that a defendant is entitled to notice pre-trial that the state, or trial court, intends to invoke the mandatory penalty provisions of § 14:95.2 and/or art. 893.1 and that automatic application limits a trial court's discretion and adherence to the sentencing guidelines of art. 894.1.
Cruel, Unusual and Excessive Punishment, and the Absence of La. Code Crim. Pro. art. 894.1 Articulation.
Defendant contends that art. 893.1 is constitutionally infirm because it imposes cruel, unusual and excessive punishment. He also contends that the trial judge in this case neglected to articulate his reasons for sentencing consistent with the sentence guidelines of La.Code Crim.Pro. art. 894.1. Our discussion of these matters in State v. Barberousse, 480 So.2d 273, 280 (La.1985), rendered this day, is applicable here.
"Art. 893.1 is a general sentencing enhancement statute applicable when a firearm is used in the commission of a felony. It is not per se constitutionally infirm, either standing alone, or as applied to this gun use ... offender. Art. 893.1 furthers the legitimate legislative end of restricting the abuse of firearms by enhancing the penalties of those who use weapons to commit crimes.
"Nonetheless, we have held that imposition of a given sentence may violate a defendant's constitutional right against excessive punishment, even though that sentence is within the statutory limit, *285 and that this Court may review a defendant's sentence for excessiveness on appeal. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Williams, 448 So.2d 659 (La.1984).
"Generally we have held that a sentence is excessive and unconstitutional if it is grossly out of proportion to the severity of the crime, in light of the harm caused to society. An unconstitutionally excessive sentence is one that shocks our sense of justice and is nothing more than the purposeless and needless imposition of pain and suffering. State v. Goode, 380 So.2d 1361 (La.1980); State v. Bonanno, 384 So.2d 355 (La.1980).
"Mandatory sentences generally fall within the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. State v. Prestridge, 399 So.2d 564, 582 (La.1981). On the other hand, the constitutional proscription against cruel and unusual punishment will override a legislatively imposed mandatory minimum sentence if, as applied to a given defendant for a given crime the punishment is constitutionally excessive. That is not the case here."
Admittedly, the trial judge did not refer to any of the sentencing guidelines described in La.Code Crim.Pro. art. 894.1. Nonetheless, there is enough of record in this case concerning the crime and its circumstances for us to conclude that seven years (or five)[5] without benefit of probation, parole or suspension of sentence is not constitutionally excessive. A man was shot and killed by defendant, and the defendant was found guilty of manslaughter. The Legislature has determined that, for the crime of manslaughter, the court may impose a maximum sentence of twenty-one years, and the defendant received only seven years, albeit without benefit of parole, probation, or suspension of sentence. Accordingly, it would serve no purpose in this case to remand for resentencing and compliance with art. 894.1.
Notice
Our treatment of this assignment of error is controlled by our decision in State v. Jackson, 480 So.2d 263 (La. 1985), also rendered this day. In that opinion, we decided that La.Rev.Stat. § 14:95.2, which provides an independent or supplemental penalty for use of a gun attending commission of ten specified felonies, is "sufficiently an accusation as to require that the accused `be informed of the nature and cause' thereof." Accordingly, to afford the defendant fair notice, La.Rev.Stat. § 14:95.2 must be included in a bill of information or indictment.
Conversely, we decided in State v. Jackson that art. 893.1, as a constitutional matter, need not be charged in a bill of information or indictment to trigger that article's enhancement provision. We reasoned that art. 893.1 does not define a crime and does not prescribe an independent penalty. Rather, it is solely a sentencing provision, which limits the judge's sentencing discretion when felonies (those where suspension of sentence is not otherwise prohibited) are committed with a firearm. It provides a minimum sentence and restrictions thereon within the penalty framework of the statutory crime committed. Nevertheless, procedural concerns in the utilization of art. 893.1 led us to devise a requirement of written, pre-trial notice, a requirement that prospectively at least would facilitate clarity as well as fairness. Although we concluded that our notice requirement with regard to art. 893.1 would be only prospective in application, we recognized that the absence of actual knowledge of either evidence of firearm use or of the impending application of art. 893.1 might, in some instances preceding rendition of our Jackson opinion, warrant nullification of a sentence imposed under the provisions of art. 893.1.
*286 In this case, there was no mention of La.Rev.Stat. § 14:95.2 or firearm use in the indictment. According to Jackson, therefore, the penalty imposed under § 14:95.2 is impermissible.
Although this defendant, Harris, also received no notice of the impending application of the art. 893.1 restrictions on the trial judge's sentencing discretion, he was not entitled to pre-trial notice of the application of art. 893.1 in this case where his trial preceded the rendition of our opinion in Jackson. The prospective rule devised in Jackson affords this defendant no relief unless he can demonstrate some particular prejudice from the lack of notice. He had pre-trial knowledge of the state's intent to prove firearm use, for among other things, in response to the defendant's motion for discovery, the state informed him of its intent to admit the defendant's shotgun into evidence. And there is simply no evidence of prejudice to this defendant from the absence of pre-trial written notice informing him of the state's intent to invoke the provisions of art. 893.1.
In Tandem Application of § 14:95.2 and art. 893.1
Having determined that the lack of notice of impending application of art. 893.1 in this case does not require our nullification of the enhancement of defendant's sentence, we must now address an even more fundamental question concerning the application of the art. 893.1 enhancement to the penalty here. And that is whether art. 893.1 is applicable at all to the crime of manslaughter (of which defendant was convicted) in light of the fact that § 14:95.2 specifically imposes a sentence enhancement for gun use in the commission of ten specified felonies, including manslaughter. For reasons hereinafter expressed, we determine that the use of art. 893.1 in such case is proper.
To begin our statutory interpretation of the firearm enhancement provisions, a brief history of their adoption is fitting. In response to public concern over the unlawful use of firearms, the Legislature determined to enhance penalties for the convictions of felonies involving gun use. Their initial effort resulted in the enactment in 1977 of La.Rev.Stat. § 14:95.2, which provided an additional two year penalty for use of a firearm in committing or attempting to commit the crimes of second degree murder, manslaughter, aggravated battery, simple kidnapping, aggravated escape, aggravated burglary, aggravated arson, attempted aggravated rape, attempted first degree murder, or attempted aggravated kidnapping. La.Code Crim.Pro. art. 893.1 was passed four years later. Although art. 893.1, also imposed additional punishment as originally presented to the Legislature,[6] it was amended simply to provide a limitation on the sentencing discretion of the judge who makes a finding that a firearm was used in the commission of a felony (one which does not otherwise prohibit suspension of sentence). That limitation on sentencing discretion requires that, as relates to the underlying felony and the sentence already provided therefor, the judge will be required to impose a minimum sentence. For a felony, like manslaughter, which authorizes a maximum penalty of twenty-one years or more, the minimum is five years.
The two statutes are complementary, not parallel. § 14:95.2 is essentially a crime/penalty statute; art. 893.1 merely limits sentencing discretion of the trial judge. § 14:95.2 imposes a two year sentence in addition to the penalty provided for the particular ten felonies; art. 893.1 establishes a mandatory minimum sentence within the already established statutory range for any felony. It does not increase the maximum sentence already provided for the commission of the particular offense. Absent sound legal reasons, or contrary expression of intent by the Legislature, the two provisions are logically compatible *287 and seem to be applicable simultaneously.
However, the argument has been raised that art. 893.1 does not apply where the gun use felony is one of the ten specific felonies listed in § 14:95.2, and for which there is independently provided a two year supplemental penalty. A basis for this position, advocated by the dissent in State v. Hogan, 454 So.2d 1235, 1237-38 (La.App. 2d Cir.1984), is that art. 893.1 is applicable to felonies only when suspension of sentence is not otherwise prohibited for such felonies, and that suspension of sentence is prohibited for the ten specified felonies in § 14:95.2 when the commission thereof is attended by use of a firearm. § 14:95.2, of course, provides a two year additional term of imprisonment without benefit of parole, probation, or suspension of sentence, or credit for good time. Contrary to the assumption supporting this argument, it is the underlying offense and its statutory penalty to which art. 893.1 applies when it imposes the minimum sentence, and it is the underlying offense and its penalty provision to which reference is made by the language of art. 893.1, "when suspension of sentence is not otherwise prohibited." § 14:95.2's prohibition against suspension of sentence is by the terms of the statute applicable only to the additional two year term of imprisonment, not to the penalty statutorily prescribed for the underlying offense. Thus it cannot be said that for each of the ten crimes specified therein, § 14:95.2 already prohibits parole, probation, or suspension of sentence.
Another argument in support of the proposition that there should be no in tandem application of § 14:95.2 and art. 893.1 is based on a provision of § 14:95.2 which reads:
The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title.... (emphasis provided)
According to this argument, since art. 893.1 is not within Title 14, its application would preclude the application of § 14:95.2, which recites that "the penalty provided herein [in § 14:95.2] shall [only] be in addition to any other penalty imposed under the provisions of this Title." The theory, however, is flawed in several respects. Certainly, the Legislature in 1977 could not have intended to negate dual application of § 14:95.2 and art. 893.1, when art. 893.1 had not yet been enacted. The pertinent question, rather, is "what was the legislative intent in 1981 when art. 893.1 was enacted," a question we will address in the next paragraph of this opinion.
By the enactment of art. 893.1, the Legislature created a limitation on the trial judge's sentencing discretion, a limitation applicable to crimes described within Title 14, including the ten felonies for which § 14:95.2 imposes an additional penalty. Common sense dictates our conclusion that the Legislature intended that art. 893.1's limitation on sentencing discretion should be applicable to all gun use felonies, including the more serious crimes enumerated in § 14:95.2. The effect of the minimum sentence (five years for a gun use manslaughter, for instance) without probation, parole or suspension of sentence, can in some instances more seriously affect the sentence of a convicted defendant than simply two years without benefit of probation, parole, or suspension of sentence in addition to a given sentence within a statutory range, which is subject to parole, probation, or suspension of sentence. Thus, it is illogical to assume that the Legislature would have intended that those convicted of the serious felonies would escape the serious consequences attending the application of art. 893.1. On the other hand, it is entirely consistent that the Legislature, aware of the existence of § 14:95.2 and its supplemental two year penalty for ten specified crimes, determined that there should be a restriction on the trial judge's sentencing discretion for all felonies, including those ten serious crimes enumerated in § 14:95.2. To embrace the contrary position would require us to conclude that the Legislature intended that art. 893.1 should be applicable to only a negligible number of crimes, such as negligent homicide or false *288 imprisonment. It is indeed unlikely that the enactment of art. 893.1 was designed to punish more severely those who commit negligent homicide than perpetrators of second degree murder, manslaughter, aggravated battery, etc.
In summary, therefore, we find as regards defendant's second assignment of error that the art. 893.1 enhancement is not constitutionally infirm as cruel, unusual and excessive punishment; that the absence of art. 894.1 sentence articulation in this case was harmless, there existing in this record sufficient factors to support this penalty which is well within the statutory range; that the two year penalty imposed in this case under § 14:95.2 is illegal; that art. 893.1 is applicable to all felonies, including those specially enumerated in § 14:95.2 and that therefore the art. 893.1 enhancement in this case is valid.

Decree
Accordingly, defendant's conviction is affirmed; his sentence is reversed and the case remanded for resentencing in accordance with the views expressed herein and according to law.
CONVICTION AFFIRMED; SENTENCE REVERSED; CASE REMANDED.
DIXON, C.J., and DENNIS, J., concur.
WATSON, J., dissents as to requiring notice.
NOTES
[1] State v. Jackson, 480 So.2d 263 (La.1985); State v. Hogan, 480 So.2d 288 (La.1985); State v. Barberousse, 480 So.2d 273 (La.1985); State v. Kennedy, 480 So.2d 299 (La.1985); State v. Blache, 480 So.2d 304 (La.1985); State v. Street, 480 So.2d 309 (La.1985), and State v. Delcambre, 480 So.2d 294 (La.1985).
[2] Factors in the judge's attitude toward Harris included the defendant's lack of prior felonies and otherwise minor criminal record, the victim's reputation for violence, and some plausible testimony with regard to self-defense.
[3] The two years was also without benefit of credit for good time, as required by § 14:95.2.
[4] Somewhat favorably to the defendant however, Ethel Pimpton, who was inside the defendant's house when the shot was fired, said she saw the defendant struggling to remove the gun from the curtain.
[5] Since we find in this opinion that the penalty imposed under La.Rev.Stat. § 14:95.2 is impermissible, the defendant's sentence, although not constitutionally excessive, will be reduced to five years.
[6] Senate Bill No. 724, as originally drafted by Senator Hudson, was introduced in the Senate on May 4, 1981.