480 So.2d 263 (1985)
STATE of Louisiana
v.
David JACKSON.
No. 84-K-1716.
Supreme Court of Louisiana.
December 2, 1985.
*264 James McDonald, Jack Dampf, D'Amico, Curet & Dampf, Baton Rouge, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Bryan E. Bush, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., Suzanne Ponder, Asst. Dist. Atty., for plaintiff-respondent.
CALOGERO, Justice.
This case affords the Court an opportunity to decide whether notice to an accused before trial must precede any attempted application of either of the two firearm use penalty enhancement statutes, La.Code Crim.Pro.Ann. art. 893.1 and/or La.Rev. Stat.Ann. § 14:95.2.
David Jackson was charged with second degree murder in the November 3, 1982 shooting death of Tyrone Scott.[1] At the hearing on Motion for Preliminary Examination and Bond Reduction, Judge John S. Covington ruled that there was probable cause as to the charge of manslaughter only. The attorney for the accused thereupon waived his client's right to trial by *265 jury, and, on a joint motion with counsel for the State, submitted the matter to a bench trial, stipulating to the evidence as adduced at the preliminary hearing.
The judge found Jackson guilty of manslaughter, a violation of La.Rev.Stat.Ann. § 14:31, which carries a maximum penalty of 21 years at hard labor. After considering a pre-sentence investigation report, Judge Covington sentenced Jackson to fifteen years and two years, consecutive, to be served without benefit of probation, parole or suspension of sentence and with the two year sentence, further, to be served without credit for good time, all in accordance with the "mandate" of La.Code Crim. Pro.Ann. art. 893.1 and La.Rev.Stat.Ann. § 14:95.2.[2] The Court of Appeal, finding no merit in defendant's arguments that his sentence was illegal, affirmed the sentence imposed by the trial judge, 454 So.2d 211. We granted writs upon defendant's application.
Jackson asserts that the lower courts erred in holding that notice is not required before imposition of sentence under La. Code Crim.Pro. art. 893.1 and La.Rev.Stat. Ann. § 14:95.2.[3] This issue and several others were argued before this Court in eight cases. Separate opinions handed down this day in addition to this case include State v. Harris, 480 So.2d 281 (La. 1985); State v. Hogan, 468 So.2d 565 (La. 1985); State v. Barberousse, 480 So.2d 273 (La.1985); State v. Kennedy, 480 So.2d 299 (La.1985); State v. Blache, 480 So.2d 304 (La.1985); State v. Street, 480 So.2d 309 (La.1985); and State v. Delcambre, 480 So.2d 294 (La.1985).
Consideration of the complaints central to defendant's assignment requires a close examination of La.Code Crim.Pro. art. 893.1 and La.Rev.Stat.Ann. § 14:95.2.
In an effort to deter felony offenders from using firearms,[4] the Louisiana Legislature in 1977[5] and again in 1981[6] enacted legislation which more severely penalized felony offenses committed with firearms. The enactment in 1977 provided additional penalties for the possession of a firearm in the commission of certain enumerated crimes. 1977 La.Act No. 622 § 1, now La. Rev.Stat.Ann. § 14:95.2, read:
§ 95.2. Additional penalties for possession of a firearm or explosive device in the commission of certain crimes.
Notwithstanding any other provisions of law to the contrary, any person who uses a firearm or explosive device at the time he commits or attempts to commit the crime of second degree murder, manslaughter, aggravated battery, simple kidnapping, aggravated escape, aggravated burglary, or aggravated arson or attempted aggravated rape, attempted first degree murder or attempted aggravated kidnapping shall upon conviction *266 serve a term of two years imprisonment for the first conviction and upon conviction for each second and subsequent offense listed in this Section, he shall serve a term of five years imprisonment. The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of sentence shall not be suspended.
The prison terms provided under the provisions of this Section, shall run consecutively to any other penalty imposed upon conviction of any of the crimes listed in this Section.
Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
Section 3. All laws or parts of laws in conflict herewith are hereby repealed.
An amendment in 1984 simply clarified that the additional term of imprisonment imposed under this provision was to be served "in the same manner as provided in the offense for which he was convicted."[7]
The 1981 provision, La.Code Crim.Pro. art. 893.1, did not, like La.Rev.Stat. § 14:95.2, impose an additional penalty for firearm use in the commission of a felony, but rather established a minimum sentence to be imposed which is within the punishment authorized for the underlying felony, and directed that the "sentence" be without benefit of probation, parole or suspension of sentence. 1981 La. Acts No. 139 § 3 provides:
Art. 893.1. Use of firearm in commission of a felony; sentencing
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(a) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(b) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Act are hereby declared severable.
Section 3. The provisions of this Act shall apply to offenses committed on or after the effective date of this Act.
Section 4. All laws or parts of laws in conflict herewith are hereby repealed.
Before discussing defendant's assertion that notice is required before imposition of sentence under the respective firearm enhancement statutes, and as a prelude to the resolution of legal issues addressed hereinafter in this opinion, it is appropriate for us to consider State v. Coleman, 465 So.2d 709 (La.1985) in connection with whether § 14:95.2 and art. 893.1 are mandatory in application.
The language of both enactments, providing that the person "shall serve" an *267 additional term (§ 14:95.2), and the court "shall impose" a minimum sentence (art. 893.1), suggests on cursory reading, some sort of compulsion. However, as this Court pointed out in State v. Coleman, 465 So.2d 709 (La.1985):
The firearm penalty enhancement statutes do not authorize a court to ignore constitutional and statutory limits on its power simply because they are framed in mandatory terms. Virtually all criminal penalty provisions are stated in mandatory terms. Usually a statute states that "whoever commits the crime of ... shall be imprisoned" for a term as prescribed therein. See e.g., La.R.S. 14:31, La.R.S. 14:42, La.R.S. 14:44. Such language, however, is not intended to authorize a court to correct a district attorney in the exercise of his constitutional and statutory discretion to proceed under a particular provision when an offender's conduct is criminal according to several statutes or to selectively enforce enhancement statutes. See La.Const., Art. 5 § 26; La.R.S. 14:4. Nor does such mandatory language require that a court exceed the bounds of its jurisdiction or authority to impose what it considers to be the correct punishment upon a person who committed but was not convicted of a particular crime. If this were not so, countless sentences based on plea bargains and verdicts of lesser included offenses could be called into question when the evidence in hindsight might be said to warrant a conviction of a more serious crime and hence a heavier penalty.
Thus, in Coleman we decided that the statutory provisions "shall serve" (§ 14:95.2) and "shall impose" (art. 893.1) are neither self operative nor imperative absent the district attorney's charging the defendant with the use of a firearm or timely moving for enhancement of the sentence.[8] In concluding that La.Code Crim. Pro. art. 882's permitting the correction of an illegal sentence at any time was not applicable, the Court pointed out that the district attorney has charge, constitutionally, of every criminal prosecution by the state in his district and that his decision to charge the defendant with a lesser grade of an offense or his election to forego enhancement does not invalidate an indictment, verdict, or sentence. The Coleman decision noted that a valid sentence can be modified only in accordance with designated procedures, prior to the beginning of execution of sentence. Thus, if the district attorney does not act to exercise his authority timely and seek enhancement of a sentence to the full extent permitted by law, the trial judge may not, following an untimely effort by the district attorney, impose the provisions of either art. 893.1 or § 14:95.2.
In the case under consideration, the bill of information did not charge use of a firearm in commission of the manslaughter offense, nor did the district attorney (or judge), prior to trial or sentencing, move the court to enhance the sentence or otherwise notify defendant that either § 14:95.2 or art. 893.1 would be applied. Nonetheless, the trial judge took note of the statutes, and aware of the evidence of firearm use presented at the preliminary hearing and stipulated at trial, specifically applied both statutes when he sentenced defendant to fifteen years without benefit of *268 parole, probation, or suspension of sentence (art. 893.1), and an additional two years without benefit of parole, probation, suspension of sentence or credit for time served (§ 14:95.2).
Since this case involved a trial judge's outset or timely application of the enhancement statutes, Coleman's holding does not mandate invalidating the sentence, although the language employed in the decision and its underlying rationale does.
Furthermore, constitutional considerations, such as the right to be informed of the nature and cause of an accusation (U.S. Const. amend. VI) and fundamental fairness, which is encompassed within due process (U.S. Const. amend. XIV), do in fact affect whether, and following what formalities, the trial judge may be at liberty, or compelled, to impose one or both of the statutory enhancements. This will be discussed hereinafter in this opinion.

NOTICE RE USE OF LA.REV.STAT. § 14:95.2 AND/OR CODE CRIM.PRO. ART. 893.1 (ASSIGNMENT OF ERROR NO. 1)
Defendant complains that before he may be exposed to the punishments provided by art. 893.1 and/or § 14:95.2, a severe limitation on the judge's sentencing discretion as to the former, and a supplemental penalty plus denial of parole, probation, suspension of sentence and credit for time served on the latter, he must first have received adequate and fair notice. Notice permits, among other things, proper preparation to defend and specific knowledge about the penalty to which the defendant is exposed in the event he chooses to plead guilty.
U.S. Const. amend. XIV, § 1 prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." In almost identical language, La. Const. art. I, § 2 provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." These due process clauses guarantee that fair procedure must be followed if the state is to be permitted to deprive a person of his liberty. J. Nowak, Constitutional Law (1978). One such fair procedure, an essential element of due process of law, is notice. Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829 (1944). In fact, U.S. Const. amend. VI, which specifically requires that the accused "be informed of the nature and cause of the accusation," was made applicable to state and local governments by In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Thus, the accused must be informed of any offense which might result in a prison term, and allowed to defend against it.
La.Rev.Stat. § 14:95.2 and Notice
The statutes under consideration are conceptually different. Although § 14:95.2 does not define a fully independent crime, it does define criminal activity, use of a gun attending commission of ten specified felonies, and it does provide for an independent or supplemental penalty. Furthermore, it appears in the Criminal Code (Chapter 1 of Title 14) at Part VI "Offenses Affecting the Public Generally," Subpart A "Offenses Affecting the Public Safety." It is sufficiently an accusation as to require that the accused "be informed of the nature and cause" thereof (U.S. Const. amend. art. VI and In re Oliver 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682). The prescribed method in Louisiana for informing an accused of a criminal charge, in this instance § 14:95.2, is inclusion in a bill of information or indictment.
In this case the defendant Jackson was not charged with firearm use, or, more specifically, violation of § 14:95.2. Nor did the jury convict him of same. Accordingly he may not be sentenced to the additional two years at hard labor under the provisions of § 14:95.2. We overrule our earlier decision in State v. Roussel, 424 So.2d 226 (La.1983), which held, to the contrary, that an accused need not be charged under § 14:95.2.
Our decision that it is imperative that § 14:95.2 be charged, shall be applied in this case, the other consolidated cases being decided today, and in all cases which are still subject to direct review by this *269 Court, that is, convictions which have not become final upon first appellate review.
This partially retroactive application of the decision is, by analogy, in accord with the approach first advocated by Justice Harlan in dissent in Desist v. United States, 394 U.S. 244, 256, 89 S.Ct. 1030, 1037, 22 L.Ed.2d 248 (1969) and recently adopted by a majority of the United States Supreme Court when construing the fourth amendment.[9]United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). In requiring that a new constitutional rule be applied to all judgments of conviction not yet final, Justice Harlan distinguished the judicial from the legislative rule-making function. He noted that the Court
announce[s] new constitutional rules ... only as a correlative of our dual duty to decide those cases over which we have jurisdiction and to apply the Federal Constitution as one source of the matrix of governing legal rules.... Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by the new rule constitute an indefensible departure from this model of judicial review. Mackey v. United States, 401 U.S. 667, 678-79 [91 S.Ct. 1160, 1172-73, 28 L.Ed.2d 404] (1971) (Harlan, J., dissenting).
La.Code Crim.Pro. art. 893.1 and Notice
Art. 893.1, on the other hand, appears in the Louisiana Code of Criminal Procedure within Title XXX, "Sentence," Chapter 2, "Suspended Sentence and Probation." It is a sentencing statute ("Art. 893.1  Use of firearm in commission of a felony; sentencing"). It does not define a crime, and it does not prescribe a penalty. It rather limits a judge's sentencing discretion when felonies (those where "suspension of sentence is not otherwise prohibited") are committed with a firearm, by providing a minimum sentence, and restrictions thereon (without benefit of parole, etc.) within the penalty framework of the statutory crime committed.
It is evident that the Legislature did not perceive art. 893.1 as charging a crime, for it entrusted to "the court" alone[10] the sentencing *270 authority, rather than to the jury or judge, the trier of guilt or innocence, the responsibility for "finding" the firearm use. Because art. 893.1 is only a sentencing statute  and of course a defendant is charged with knowledge of the law  it is not imperative that a defendant be charged with firearm use for him to be exposed to the penalty provided in part by art. 893.1.
For these reasons a defendant need not be charged in a bill of information or indictment with firearm use to trigger art. 893.1's penalty enhancement provisions.
Yet there are considerations which compel concern about an accused's not being advised prior to trial of a prospective art. 893.1 application.
If the judge in time is going to be called upon to "make a finding" that a firearm was used, should not an accused in defending against a criminal charge as to which firearm use is not an essential element be aware that in due course whether a firearm was used in commission of the crime or not will seriously affect sentencing alternatives of the judge?[11] Furthermore, if the district attorney is in charge of every criminal prosecution by the state in his district, (La. Const. art. V, § 26(B)), should not the district attorney be called upon to invoke the enhancement provision of art. 893.1 by at least some formal notification of his intent, or desire, to invoke the provisions of art. 893.1? And when a defendant chooses to plead guilty, should he not in advance be alerted that art. 893.1 is going to be invoked? Since art. 893.1 requires that the trial judge made a "finding," which implies at least the possibility if not the certainty of an adversary hearing, and since the judge's role is that of an impartial arbiter rather than that of a prosecutor, should it not be the role of the prosecutor to provoke the hearing at which the finding can be made by the judge?
These questions and others have been part of the doubt and confusion surrounding art. 893.1 and § 14:95.2. Appropriate procedures for the utilization of the two statutes are wanting. In fact, the dual passage of these firearm enhancement statutes was not the result of a coordinated legislative plan, carefully designed and executed. Instead, there was an initial legislative proposal in 1977, which resulted in the enactment of § 14:95.2, a statute which was apparently not widely employed.[12] It has been speculated that La.Code Crim. Pro. art. 893.1, the initial version of which would likely have superceded § 14:95.2,[13] was presented to the Legislature by sponsors unaware of the existence of the nearly identical § 14:95.2. As amended and passed art. 893.1 took on its present substance, merely limiting sentencing discretion. Consequently, we are faced with two firearm enhancement statutes which our Coleman decision found to "badly need comprehensive legislative revision because they raise numerous constitutional questions and are subject to differing statutory interpretations." 465 So.2d at 711.
*271 The Legislature has not acted to clarify the statutes either after passage of art. 893.1 in 1981 or following this Court's opinion in Coleman, supra. Thus, if any sense of system and clarity is to be instituted to preserve these firearm enhancement statutes, it is for this Court to do so. Accordingly, we find it necessary and advisable to institute a procedural rule to facilitate fairness and clarity in the application of art. 893.1, and herewith do so.
An accused is entitled to know in advance of trial by receipt of a written notice from the prosecutor that the state intends to invoke art. 893.1 by calling on the trial judge prior to sentencing to make a finding that a firearm was used in the commission of the charged felony.[14] Absent such pre-trial notice, the penalty enhancement provision contained in art. 893.1 shall not be applied.
This ruling, insofar as it precludes the judge's enhancing the sentence in a firearm use felony under art. 893.1 (at least prospectively) constitutes in part an extension of our Coleman holding, although it is entirely consistent with the language and rationale of that opinion.[15] It is prompted by the need to respect both the judge's impartial role and the district attorney's constitutional right to control every prosecution in his district.[16] And it serves to bring clarity and to facilitate more certain and fair administration of the criminal procedural laws.
We conclude that this pre-trial written notice from the district attorney that the state intends to invoke art. 893.1, discussed at some length in the preceding paragraphs, is not compelled by a need to vindicate the sixth amendment's right to be informed of the nature and cause of an accusation nor by the fourteenth amendment's due process clause. Accordingly, we choose to make this rule prospective only, that is, applicable only to cases which are tried after the date of this opinion. Such prospective application is consistent with this Court's formulation of other safeguards in criminal procedure, such as those set out in State v. Prieur, 277 So.2d 126, 130 (La.1973). State v. Jones, 332 So.2d 466 (La.1976); State v. Thomas, 290 So.2d 690 (La.1974); State v. Grant, 295 So.2d 168 (La.1973).
Nonetheless the absence of actual knowledge of evidence of firearm use, or impending application of art. 893.1, may in appropriate cases nullify a sentence imposed under the provisions of art. 893.1. For instance, note the decision being rendered this day in State v. Delcambre, 480 So.2d *272 294 (La.1985), where a guilty plea was entered, after advice on maximum sentence which did not include art. 893.1 enhancement, following which the art. 893.1 enhancement was applied. Another such case is the one under consideration here, State v. Jackson.
At first glance it might seem that Jackson was not prejudiced by the absence of notice pre-trial, inasmuch as he was aware before trial from evidence adduced at the preliminary hearing that the state's case of manslaughter rested upon evidence that the defendant killed Tyrone Scott by firing a pistol.
This, of course, is true. Defendant knew before trial of the state's evidence of firearm use; and in fact through counsel he stipulated for use at trial the entirety of the preliminary examination evidence. Nonetheless, defendant was not notified in any fashion of the state's or the judge's intention to invoke art. 893.1. Yet he virtually pled guilty to manslaughter when he so stipulated and presented no other evidence. This decision came immediately after the same trial judge had found the same evidence sufficient to establish probable cause and to hold defendant on a manslaughter charge.
Had defendant been advised of the forthcoming invocation of art. 893.1, with the potential of a sentence from five to twenty-one years, all without benefit of probation, parole or suspension of sentence (roughly comparable to a sentence from 15 to 63 years, without benefit of parole),[17] his defense strategy might well have been different from that which he employed. Facing an effective 15 to 63 year sentence on conviction for manslaughter, and had he been so advised pre-trial by the district attorney, he quite likely would have tried his case to a jury, or even to a judge, more aggressively than he did. The fact situation was pregnant with the possibility of a self-defense acquittal or conviction of a lesser offense than manslaughter. (Defendant intervened in an argument between defendant's girl friend and the victim, was struck several times by the victim, whereupon he fired his pistol.)
Also noteworthy, defendant's virtual, although not actual, guilty plea was no doubt induced by his attorney's belief that pre-trial notification of art. 893.1 enhancement was imperative, a belief which, while not full vindicated, has upon urging, prompted this Court to adopt, for prospective use only, a formal pre-trial notification rule.
The peculiar posture of this case at the trial and appellate levels[18] prompts our nullifying utilization of art. 893.1 in the sentencing of this defendant.
Each of defendant's four assignments of error relate to the sentence imposed under La.Code Crim.Pro. art. 893.1 and La.Rev. Stat. § 14:95.2. Because we have found merit in the first assignment of error and herewith prohibit the use of either § 14:95.2 or art. 893.1 in sentencing this defendant, it becomes unnecessary for us to address the second, third and fourth assignments of error (described at footnote three hereinabove).
Because the bill of information did not charge defendant with § 14:95.2, firearm use in commission of the manslaughter, and because we have determined that applying art. 893.1 unfairly prejudices defendant, neither § 14:95.2 nor art. 893.1 may be applied in sentencing him.

Decree
Defendant's conviction is affirmed, but his sentence reversed and the case remanded for re-sentencing in accordance with law.
AFFIRMED; SENTENCE REVERSED; REMAND FOR RE-SENTENCING.
*273 DIXON, C.J., concurs with reasons.
DENNIS, J., concurs with reasons.
WATSON, J., dissents as to requiring notice.
DIXON, Chief Justice (concurring).
I respectfully concur in the result here, but believe Louisiana's long history of due process in notifying defendant in the bill of the cause with which he is charged would be better served by charging him with each statute he is accused of violating, including C.Cr.P. 893.1. The penalty, a variant of that in the statute defining the crime, was part of the "nature and cause of the accusation against him." Art. 1, § 16. La. Const. 1974.
NOTES
[1] The incident occurred in the course of a dispute between the victim, Scott, and Jackson's girlfriend over who was to babysit for her children. Jackson intervened and stopped the argument, but the victim pushed Jackson against the wall and struck him several times. At that point, Jackson pulled out a pistol which he fired at the retreating Scott. He struck the victim once near the hip line in the back, but the bullet apparently hit a bone, richocheted, and struck the victim in the heart, causing instantaneous death.
[2] The pre-sentence investigation revealed that the defendant had no juvenile record, but a minor misdemeanor record, including shoplifting and reckless driving. Although the defendant is not married, he had maintained a 13 year long relationship with Janice Young, with whom he had six children. Jackson had a good work record and supported his children. Nevertheless, the judge concluded that "to do anything other than a term of confinement where another human life has been taken without due process of law would deprecate the seriousness of that conduct to absolutely nothing." He concluded that a substantial confinement period was warranted.
[3] Additionally, the defendant urges lower court error in their holding that the in tandem application of art. 893.1 and § 14:95.2 is proper; in their holding that art. 893.1's provision requiring that imposition or execution of sentence not be suspended, nor the sentence subject to probation or parole, is applicable to the entire sentence chosen by the trial judge, not simply to the minimum sentence required by art. 893.1; and in their holding that § 14:95.2, before its 1984 amendment allowed confinement at hard labor. We do address the in tandem application of art. 893.1 and § 14:95.2 in State v. Harris, 84-KO-1828, another of the related cases rendered this day. Defendant's additional assignments of error, however, are not treated in this or any of the other firearm enhancement cases just decided, since their resolutions do not require it.
[4] Cheney C. Joseph, Jr. Developments in the Law, 1980-81: Postconviction Procedure, 42 La. L.Rev. 693, 702 (1982).
[5] 1977 La.Acts No. 622 § 1.
[6] 1981 La.Acts No. 139 § 3.
[7] After amendment, La.Rev.Stat.Ann. § 14:95.2 reads in pertinent part:

... The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment in the same manner as provided in the offense for which he was convicted and without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of sentence shall not be suspended.... (emphasis provided)
[8] In Coleman, a youth had been charged by bill of information with attempted first degree murder and was convicted by a jury of attempted manslaughter. He was sentenced to five years imprisonment at hard labor, and the Court of Appeal affirmed his sentence as well as his conviction. After the execution of the sentence had begun, the state petitioned the trial court to amend the defendant's sentence. Believing that the firearm enhancement statutes required additional, or more burdensome penalties, the trial court increased the defendant's punishment to a total of seven years at hard labor, to be served without benefit of probation, parole, or suspension. The trial court concluded that, since the evidence at trial proved the firearm use, the punishment originally imposed was illegal, and under La.Code Crim.Pro.art. 882, could be corrected at any time by the court that imposed the sentence. This Court determined that the original sentence, comporting with and based upon valid statutes, bill of information, and verdict, was not illegal and thus not subject to being amended or changed after execution of the sentence had begun.
[9] Before a majority of the United States Supreme Court agreed with Justice Harlan's conclusion that "`retroactivity' must be rethought," the issue was discussed from a historical perspective. It was noted that the federal constitution did not address the retroactivity problem. (And we might add that our state constitution is equally silent on the matter.) However, before the decision in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), both the common law and decisions of the United States Supreme Court recognized a general rule in which constitutional decisions of the Court were made retroactive, with limited exceptions. Id., 457 U.S. at 543, 102 S.Ct. at 2583 (quoting Robinson v. Neil, 409 U.S. 505, 507, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973)). Linkletter and Tehan v. United States ex rel Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) altered that approach to the issue of retroactivity and concluded that, at least to judgments of conviction not yet final when a new constitutional rule was declared, the rule would apply retroactively. There was a departure from this principle, however, in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The balancing of three factors ["(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards," Stovall, 388 U.S. at 297, 87 S.Ct. at 1970] was employed instead. Since the balancing suggested a case by case analysis, retroactive effect of new constitutional rules varied from a complete application when the purpose of the rule was to enhance the "truth-finding function" of trial to application only to future cases, where, for instance, new standards were established to revoke parole. Although the Court chose not to alter retroactivity questions which were clearly controlled by past precedents, the majority determined that, in cases not so controlled, the Harlan approach would first be considered to determine if it would resolve the retroactivity issue in "a principled and equitable manner." United States v. Johnson, 457 U.S. at 549, 102 S.Ct. at 2586.
[10] La.Code Crim.Pro.art. 893.1 imposes its minimum sentence "[w]hen the court makes a finding...." La.Code Crim.Pro.art. 931(1) defines "court" as "a court with criminal jurisdiction or its judge." (emphasis added) We note, as a matter of interest, that the judicial determination of a critical fact such as whether a defendant possessed a firearm during the commission of an offense is presently being challenged before the United States Supreme Court as a violation of the defendant's constitutional right to trial by jury. McMillan v. Pennsylvania, 494 A.2d 354 (Pa.1985), cert. granted, 474 U.S. 815, 106 S.Ct. 58, 88 L.Ed.2d 47.
[11] For instance, this defendant without art. 893.1 application was facing zero to twenty-one years, with benefit of parole, probation, or suspension of sentence. With art. 893.1 application he was facing five to twenty-one years, without benefit of parole, probation, or suspension of sentence. Whether only five years, or all of the years of the imposed five to twenty-one year sentence for manslaughter with firearm use may be imposed without benefit of parole, probation, or suspension of sentence is a question posed in this case and not reached. See footnote three above.
[12] The Shephard's Louisiana Citation does not reflect any cases which discuss § 14:95.2 until the case of State v. Roussel in 1982.
[13] As initially presented art. 893.1 like § 14:95.2 would have added an additional penalty to be served without benefit of parole, probation, suspension or deferral of sentence, or credit for good time served. The additional penalty would have been the maximum sentence of the underlying felony if that sentence were less than five years or five years if the maximum sentence of the underlying felony were more than five years. La.S. 724, Regular Sess. (1981), as originally drafted.
[14] Notice like this is not foreign to our criminal procedure. In State v. Prieur, 277 So.2d 126, 130 (La.1973), this Court set forth guidelines to safeguard the introduction of evidence of prior offenses used to establish knowledge system and/or intent. Although our concerns in this care are not the same as those in Prieur, the need for pre-trial notice to facilitate a more certain and fair administration of criminal procedures exists in both. The Prieur notice consists of a written statement, describing the act which the state intends to offer into evidence, furnished the defendant within a reasonable time before trial. Similar notice of the use of a firearm enhancement statute would enable the defendant to prepare for his post-trial pre-sentence opportunity to dissuade the trial judge's "finding" that a firearm was used and, just as importantly, alert him timely to the consequence of a guilty plea.
[15] "The firearm penalty enhancement statutes do not authorize a court to ignore constitutional and statutory limits on its power simply because they are framed in mandatory terms.... Such language, however, is not intended to authorize a court to correct a district attorney in the exercise of his constitutional and statutory discretion to proceed under a particular provision when an offender's conduct is criminal according to several statutes or to selectively enforce enhancement statutes. See La.Const., Art. 5, § 26; La.R.S. 14:4. Nor does such mandatory language require that a court exceed the bounds of its jurisdiction or authority to impose what it considers to be the correct punishment upon a person who committed but was not convicted of a particular crime...." State v. Coleman, 465 So.2d at 712.
[16] "Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law." La. Const. art. V, § 26(B).
[17] And the judge did give him fifteen years without benefit. Again, we note defendant's assignment of error, unresolved in this decision, that art. 893.1 requires sentence without benefit of parole, probation or suspension only for the mandatory minimum. See footnote 3.
[18] Since defendant did not in fact plead guilty, and has been found guilty, withdrawal of the guilty plea is not a possible solution.