WATSON, Justice.
This matter was consolidated for argument with State v. Kevin M. Shows, 488 So.2d 992 (La., 1986).[1] Both cases involve enhancement of sentences for use of a firearm in a felony under LSA-C.Cr.P. art. 893.1.[2] However, Moore’s sentence was *988 also enhanced under LSA-R.S. 14:95.2.[3] Since the cases turn on different issues, separate opinions are being rendered.
PACTS
Defendant, Otis Moore, pled guilty to one count of attempted first degree murder, in violation of LSA-R.S. 14:30[4] and LSA-R.S. 14:27.[5] Moore was sentenced to serve eight years at hard labor and the sentence was enhanced under LSA-C.Cr.P. art. 893.1 to provide that the sentence was without benefit of probation, parole or suspension of sentence. In addition, Moore was sentenced to an additional consecutive sentence of two years at hard labor without benefit of probation, parole, suspension of sentence, or credit for good time under LSA-R.S. 14:95.2.
Moore’s crime arose out of his passionate attachment to Ms. Silvia Diane Bass. During the course of the pair's stormy relationship, she had filed and withdrawn three assault and battery charges against him. The couple stayed at the Sheraton Hotel together the Saturday night before the crime. Moore also stayed at her apartment Sunday night and again on Tuesday night. On Wednesday, April 7, 1982, Moore refused to allow her to leave the house to go to work, being in a jealous rage because she had spoken to another man on the street. Bass called the police and told Moore in front of the officers that she did not want him around the premises again.
After the police left, Moore returned to the house, having previously broken a piece of plywood to unlatch the door. He attempted unsuccessfully to force Ms. Bass into his automobile, and the neighbors called the police who returned to the scene. While she was on her way to work, Moore passed her and shot at her car. The bullets did not hit her or the car. The .38 caliber revolver Moore used belonged to Ms. Bass. She admitted that she had previously shot at Moore at least twice. The police agreed to follow her home from work and repair her door. As the police followed Ms. Bass home, Moore passed her again, riding as a passenger in a friend’s car, and again pointed the gun at her. The following officers pulled their pistols; Moore pointed a shotgun at them, forced his way into the Bass car and drove it away as she exited from the opposite side. After going downtown with the policemen, Ms. Bass was taken to her job at the hospital, and the police returned to escort her home at 11:00 P.M. While she was preparing to spend the night at a friend’s house, Moore ap *989 peared again but left with the police in unsuccessful pursuit.
Later, Moore was located on Airline Highway in Baton Rouge. A roadblock was established; to avoid the car blocking his way, Moore drove up into a yard, lost control of the car, and ran into a fence. He then got out of the car and shot across the top at a city police officer. The fire was returned and Moore subsequently surrendered. It was estimated that Moore fired at least four shots at the four deputies and two city policemen on the scene. Moore was charged with multiple offenses, including six counts of attempted first degree murder, one count of attempted second degree murder, resisting arrest, aggravated burglary, auto theft, aggravated battery, simple kidnapping, and three counts of aggravated assault. He pled guilty to attempted first degree murder and a sentencing hearing was held.
At the sentencing hearing, the evidence was that Moore was born on August 12, 1947. He is an ex-serviceman who was honorably discharged from the Air Force after combat service in Vietnam. He had no juvenile record and his police record consisted entirely of episodes involving Ms. Bass. He is a high school graduate with a good work record. At the time of the offenses, he was in his junior year at Southern University and working at two jobs. After noting that the maximum sentence was fifty years at hard labor, the trial court mentioned the possibility of probation but decided that ten years at hard labor was an appropriate sentence.[6] The prosecutor then noted that LSA-C.Cr.P. art. 893.1 required five years of the sentence be without eligibility for probation or parole and, under LSA-R.S. 14:95.2, an additional two years was mandated without benefit of parole, probation, suspension of sentence, or credit for good time, Moore’s counsel conferred with his client and moved to withdraw the guilty plea and exercise his right to trial. At that time, the prosecutor stated:
“Judge, my only — when we negotiated this matter, the only negotiating that I did was that I would go with one count and I took no part whatsoever in the sentencing. Mr. Nordyke indicates to me that you and he — it may have been a bargain or negotiation between the Court and defense counsel — .
“THE COURT: That’s right....”[7]
The court then announced that it would allow Moore to withdraw his plea with the understanding “if I decide to drop the maximum on him, I will.”[8] Subsequently, the court stated:
“He is free to withdraw his plea and I am free to withdraw my negotiated sentence. (Emphasis added)
[[Image here]]
“I don’t have any idea I will let him off with ten in case he’s convicted after a merit trial. I don’t believe I will. I will give him more.”[9]
The court then allowed Moore and his counsel to consider the matter overnight.
On the following day, Moore said he wished to maintain his guilty plea. The court admitted that it had not considered the two enhancement statutes in connection with the sentence negotiation.[10] Comply *990 ing with “the mandate” [11] of LSA-C.Cr.P. art. 893.1 and LSA-R.S. 14:95.2, the court sentenced Moore to ten years, without benefit, noting that under his initial ten year sentence Moore would have been eligible for parole consideration at the end of three and a third years.[12]
LAW
In State v. Kennedy, 480 So.2d 299 (La.1985), defendant was not prejudiced by lack of formal notice of sentencing under LSA-C.Cr.P. art. 893.1, because he and his counsel were fully aware that the district attorney intended to press for enhancement.
State v. Roussel, 424 So.2d 226 (La.1982) held that a defendant need not be separately charged for his sentence to be enhanced under LSA-R.S. 14:95.2 as long as adequate notice and an opportunity to defend were offered.
State v. Coleman, 465 So.2d 709 (La.,1985) held that the mandatory language of LSA-C.Cr.P. art. 893.1 does not require automatic enhancement absent action by the prosecutor. The article is not self-operative nor imperative. If it were, “countless sentences based on plea bargains” [13] would be questionable. Coleman indicates that Art. 893.1 must be invoked by the district attorney’s office. A sentence which does not apply enhancement is not illegal and subject to correction by the trial court under LSA-C.Cr.P. art. 882.[14]
State v. Jackson, 480 So.2d 263 (La.,1985) held that LSA-C.Cr.P. 893.1 is a sentencing statute. In cases tried after Jackson,[15] the penalty enhancement provision of the article can only be invoked when the accused receives written notice in advance of trial by the prosecutor. Except in instances where there is unfair prejudice to the defendant, the Jackson rule is prospective.[16] Like Coleman, Jackson indicates that enhancement must be sought by the district attorney, because the judge’s role is that of an impartial arbiter who makes the finding that a felony was committed with a firearm.[17] Jackson points out that “absence of actual knowledge of ... impending application of Article 893.1 may in appropriate eases nullify the sentence imposed under the provisions”[18] of that article. Actual prejudice to Jackson was found.
State v. Harris, 480 So.2d 281 (La.1985) held that the defendant had actual pretrial notice of the state’s intention to prove firearm use and was not prejudiced by application of Article 893.1. Under Harris, Article 893.1 and LSA-R.S. 14:95.2 are complimentary statutes and can be applied in tandem. However, there was no mention of LSA-R.S. 14:95.2 or firearm use in the indictment. Therefore, the penalty imposed under LSA-R.S. 14:95.2 was illegal. *991 As to LSA-R.S. 14:95.2, the notice rule has limited retrospective application to those cases still subject to direct review.[19]
In State v. Hogan, 480 So.2d 288 (La.1985), defendant had actual pretrial knowledge of the state’s intention to prove firearm use. Enhancement under Article 893.1 was valid. However, since there was no mention of a firearm or LSA-R.S. 14:95.2 in the indictment, the penalty imposed under LSA-R.S. 14:95.2 was illegal. Like Harris, Hogan held that the specific enhancement in LSA-R.S. 14:95.2 for use of a gun in ten specified felonies does not foreclose enhancement under Article 893.1.
In State v. Barberousse, 480 So.2d 273 (La.1985), defense counsel requested a jury charge on article 893.1 and stated at the sentencing hearing that the defendant understood the court intended to apply the article. Thus, the defendant had actual notice that he would be subject to article 893.1.
State v. Street, 480 So.2d 309 (La.,1985) held that Art. 893.1 is inapplicable when the use of a weapon is an intrinsic part of the underlying crime.
In State v. Delcambre, 480 So.2d 294 (La.1985), Delcambre was advised when he pleaded guilty that he could receive a maximum sentence of twenty-one years at hard labor but was not told until his sentencing that Article 893.1 would be applied. The trial court, by indicating at the time of the guilty plea that a suspended sentence was possible, implied that LSA-C.Cr.P. art. 893.1 would not be applied. Therefore, article 893.1 enhancement was illegally prejudicial.
Delcambre held that when a defendant has been advised relative to his sentencing exposure and the enhancement statutes are not mentioned during the sentencing colloquy, enhancement inconsistent with the pri- or actions of the trial judge, which comes as a surprise to the defendant, establishes clear prejudice.
CONCLUSION
It is clear from the sentencing colloquy that Moore initially pleaded guilty in expectation of a ten year sentence at hard labor, a sentence negotiated with the trial judge. Although Moore was allowed to withdraw his plea after being advised that he would be given a ten year enhanced sentence, there was at least an implied threat that he would get a fifty year sentence if he were tried and convicted. The trial court, erroneously regarding application of the two enhancement statutes as mandatory, imposed an effective sentence which was longer than that which he had previously negotiated with defendant’s counsel.[20] Under these circumstances, Moore’s guilty plea to the enhanced sentence can hardly be regarded as voluntary. There was specific prejudice when the trial judge decided that he would not impose the ten year sentence to which he had agreed, but instead would impose an enhanced ten year sentence. Because of this prejudice, the enhanced sentences under LSA-R.S. 14:95.2 and LSA-C.Cr.P. art. 893.1, which total ten years, must be vacated and Moore’s initial sentence of ten years at hard labor reinstated.
For the foregoing reasons, the eight year sentence without benefit and the two year sentence without benefit of probation, parole, suspension or credit for good time are vacated and the initial ten year sentence at hard labor imposed by the trial court is reinstated.
SENTENCE VACATED; TEN YEAR SENTENCE AT HARD LABOR REINSTATED.
DENNIS, J., concurs with reasons.
CALOGERO, J., dissents and assigns reasons.
LEMMON, J., dissents, believing relator’s sole remedy under these circumstances is an attach on the plea.

. Docket No. 85-K-0880.

. LSA-C.Cr.P. art. 893.1 provides:
“When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
"(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
"(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
"Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.”

.LSA-R.S. 14:95.2 provides:
"A. Notwithstanding any other provisions of law to the contrary, any person who uses a firearm or explosive device at the time he commits or attempts to commit the crime of second degree murder, manslaughter, aggravated battery, simple kidnapping, aggravated escape, aggravated burglary, aggravated arson, attempted aggravated rape, attempted first degree murder, or attempted aggravated kidnapping shall upon conviction serve a term of two years imprisonment for the first conviction and upon conviction for each second and subsequent offense listed in this Section, he shall serve a term of five years imprisonment.
"B. The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment in the same manner as provided in the offense for which he was convicted and without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of sentence shall not be suspended.
"C. The prison term provided under the provisions of this Section shall run consecutively to any other penalty imposed upon conviction of any of the crimes listed in this Section."

. LSA-R.S. 14:30 provides in pertinent part: "First degree murder is the killing of a human being:
******
"(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties; ....”

. LSA-R.S. 14:27 provides in pertinent part:
"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.”

."Thus, I have decided to order that you be committed to the custody of the Louisiana Department of Corrections in accordance with Revised Statutes Title 15, Section 824 and confined at hard labor for a term of ten years. Or course, as the law mandates, you’re given credit on that ten year sentence for any time that you have served as a result of your arrest for this offense. Now, Mr. Moore, as one convicted, based on your plea, and now sentenced, it is my obligation to advise you that you have an absolute right to appeal....” (Tr. 145)

. Tr. 149.

. Tr. 149.

. Tr. 150.

. "THE COURT: When Mr. Hester called to my attention 893.1 and 95.2, and while I was familiar with them, I’m not going to lie to you, I never even thought about them....” (Tr. 156)

. Tr. 157.

. The confusion engendered by LSA-C.Cr.P. art. 893.1 is exemplified by the fact that the prosecutor thought only five years of the sentence must be without benefit (Tr. 147), while the court gave eight years without benefit (Tr. 162).

. 465 So.2d 709 at 712.

. LSA-C.Cr.P. art. 882 provides:
"A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
"B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
"(1) In an appealable case by appeal; or
“(2) In an unappealable case by writs of cer-tiorari and prohibition.
“C. Nothing in this Article shall be construed to deprive any defendant of his right, in a proper case, to the writ of habeas corpus."

. December 2, 1985.

. The date of that opinion is December 2, 1985. Moore was not tried but pled guilty on December 10, 1982, and again on February 25, 1983.

. State v. Byron Fraser, 484 So.2d 122 (La.,1986), notes that: “the appearance of an impartial judiciary is not served when an appellate court supplies an objection to the prosecutor who has not complained that the defendant did not receive the harshest minimum sentence under the penalty statute.” 484 So.2d 122 at 125.

. 480 So.2d 263 at 271.

. Since Moore’s is a post-conviction application which has already received direct review, this rule does not apply to him.

. Under his initial sentence, Moore would have been eligible for parole after three and a third years.